**Danny SHARP, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

Dec. 9, 1977.

Ray D. Baldwin, Williamsburg, for appellant.

Robert F. Stephens, Atty. Gen., Carl T. Miller, Jr., Asst. Atty. Gen., Frankfort, for appellee.

REED, Justice.

Danny Sharp, a sixteen-year-old boy, was convicted of two counts of murder and sentenced to life imprisonment on each count. He appeals. He asserts: that the Whitley Juvenile Court illegally transferred jurisdiction of his case to the circuit court; that he was subjected to double jeopardy in contravention of the United States Constitution; and that inadmissible evidence in the form of photographs was permitted to be introduced in the trial court over his objection and to his prejudice. We affirm the judgment of the circuit court.

In view of Sharp's claim of improper transfer of jurisdiction from the juvenile court to the circuit court where he was tried as an adult, a consideration of the facts of the crime is necessary.

Mack Halcomb, fifty years of age, and his daughter Stephanie, six years of age, disappeared from their home on Monday, August 10, 1976. Their bodies were found in a ditch at a strip mine site about five miles from their residence three days later, Friday the thirteenth. Mack Halcomb had been shot six times with a .22 caliber weapon and Stephanie had been shot once with a .22 and once with a .32 caliber weapon. The bodies were covered with some slate rock.

The chief witness for the prosecution was Larry Collins, a boy near Sharp's age, who was a participant in the crime. Larry testified that he, Danny Sharp, Donnie Barton and Randy Collins (no relation to Larry) went to Mack Halcomb's house early in the morning of August 10, 1976, to rob him. Larry had seen Halcomb at a carnival on the preceding Monday evening. Larry said Halcomb had a large sum of money in his wallet on this occasion.

According to Larry, when he, Sharp and Barton, all about 16 or 17 years old, arrived at the Halcomb home they broke in a door and entered. Halcomb came from his room to confront them. Sharp shot him six times. When six-year-old Stephanie came from her room and then turned to flee, Sharp shot her once in the back.

Larry also testified that Sharp took the wallet from Halcomb's pants in the bedroom. Then the three boys took the bodies of Halcomb and Stephanie and put them in Halcomb's pickup truck and hauled them to the strip mine site. They unloaded the bodies into a ditch. Sharp shot Stephanie again, this time with a .32. He took off his underpants and placed them over her head. He took a tape player out of Halcomb's pickup truck and threw it on the bodies. When he did so, according to Larry, he said, "You all play you some music on your way to heaven."

James Lee was another witness for the prosecution. He said Sharp spent most of Monday with him at his home. He took Sharp home around 10:00 p. m. At about 2:45 a. m. on Tuesday morning, Sharp called him and said, "I just killed two people." Two other witnesses testified they saw a pickup truck traveling on the road that led to the strip mine site where the bodies were found between one and two o'clock Tuesday morning. Sharp did not testify at his trial.

■ This court rejects Sharp's claim that he was subjected to double jeopardy by the hearing in juvenile court followed by the trial in circuit court. The juvenile court hearing mandated by KRS 208.170 confined itself from beginning to end to a determination of whether the case should be transferred to circuit court. "The hearing held to consider the transfer of a juvenile to the circuit court shall determine if there is probable cause to believe that the offense was committed and that the child committed the offense." KRS 208.170(2). This was not a proceeding that could possibly have resulted in adjudication of guilt or punishment. It is harmonious with, rather than in contravention of, the requirements of *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975).

■ Having determined that probable cause existed that the offense (murder) had been committed and that Sharp, the juve-

nile, had committed the offense,[1] the juvenile court then concluded that it was "in the best interest of the child (Sharp) and the community" to order a transfer to the circuit court where Sharp would be tried under the regular law governing crimes. KRS 208.170(3).

Despite Sharp's complaint that the order of the transfer was too sparse in its recitations of the reasons for transfer, we find that every constitutional protection provided by *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) was afforded him.

Sharp was represented by employed counsel at the "probable cause" hearing and thereafter. His rights were fully explained to him. His parents were present. At Sharp's instance, the circuit judge reviewed the action of the juvenile court in transferring its jurisdiction. The record enabled the reviewing court to make "a meaningful review."

The statutory criteria for transfer are expressed in KRS 208.170(3). They may be summarized insofar as pertinent here as follows:

1. The seriousness of the alleged offense.
2. Whether the offense was against person or property, with greater weight being given to offenses against persons.
3. The maturity of the child as determined by his environment.
4. The child's prior record.
5. The prospects for adequate protection of the public.
6. The likelihood of reasonable rehabilitation of the child by the use of procedures, services, and facilities currently available to the juvenile justice system.

According to the record, Sharp was the ring leader in the commission of brutal and heinous crimes against the person of an adult and the person of a child. His maturity was demonstrated by the method of the commission of the crime and the leadership he displayed. He had spent his ninth year of education at the Boy's Camp in Middlesboro, Kentucky, because he "stole a car." Thus, he had a prior record, and rehabilitation by the juvenile justice system had failed.

We, therefore, hold that the trial judge did not commit error when he accepted jurisdiction. Sharp received every substantive legal right to which he was entitled.

 The final complaint addresses itself to the introduction of photographs of the scene of the discovery of the bodies. Sharp argues that they were inflammatory. The credibility of the testimony of Larry Collins was an element. The photographs were relevant in that regard. A photograph that is otherwise admissible does not become inadmissible simply because it is gruesome and the crime is heinous. *Brown v. Commonwealth*, Ky., 558 S.W.2d 599 (decided November 18, 1977).

The judgment is affirmed.

All concur.

---

1. The finding was that Sharp was "implicated" in the murder of the Halcombs.