**Edward L. TAYLOR, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

March 14, 1978.

Rehearing Denied May 2, 1978.

---

Jack E. Farley, Public Defender, Rodney McDaniel, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., David M. Whalin, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

On this appeal the appellant challenges the judgment of the Fayette Circuit Court finding him guilty of the strangulation death of Barbara Byrd (KRS 507.020) and fixing his penalty at 30 years' imprisonment. Barbara's frozen body was found on Race Street, near 3rd Street, in Lexington, Kentucky, on January 1, 1977, wrapped in a greenish bedspread. She had been strangled with an electric cord wrapped several times around her neck. The appellant cites four grounds for reversal.

First, the appellant argues that he was entitled to a directed verdict of acquittal. During a two-day trial 27 witnesses testified, 22 being called by the Commonwealth and 5 by the appellant. The scenario of this case is comparable to one of our current murder-mystery novels.

Six or eight months prior to her death Barbara, who usually made her home in Lexington with her mother, and the appellant lived together as common-law husband and wife in a tenant house located in an isolated section of Jessamine County, Kentucky. During this same period of time the appellant was married to, but not living with, Anna May Taylor, who lived in Fayette County. On or about December 10, 1976, the appellant drove his concubine, who was a retarded 20-year-old female, to her mother's house in Lexington, where he gave her $25 to have her hair fixed. He then returned to Jessamine County. Between the time the appellant took Barbara home and Christmas, he made many tele-

phone calls and personal visits to her home in Lexington in an unsuccessful endeavor to get her to return with him to Jessamine County. On December 13, the appellant was seen alone drinking beer and dancing at Tommy's Place in Versailles. On December 17, he and Barbara were seen together at the Cozy Corner restaurant in Nicholasville between the hours of 7:30 p.m. and 8:00 p.m., and on the same night the two of them were seen together at the Spiderweb Lounge in Lexington. Also, on December 23, they were seen together at the Cozy Corner.

The greenish bedspread in which Barbara's body was wrapped was identified as being similar to one the appellant had in his home. The electric cord used to strangle Barbara was identified as being similar to other electric cords taken from the appellant's home.

The appellant denied that he had been with Barbara at the Cozy Corner restaurant, or that he and Barbara had been at the Spiderweb Lounge, or that the greenish bedspread was his or came from his home, or that the electric cord used to strangle Barbara was his or came from his home. The appellant testified that he had been at Barbara's home in Lexington on December 17. However, he was confronted with a written statement which he made on January 1, 1977, in which he said to the contrary. On direct examination the appellant testified that he had never harmed Barbara in any way. The testimony of Officer Jim Sparks rebuts this statement.

This court, in *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530 (1977), said:

"If under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal. * * * "

There was ample evidence of sufficient probative value to justify the submission of this case to the jury and to support its verdict.

■ Next, the appellant contends that after he had concluded his case the trial judge erred in permitting the Commonwealth to introduce a statement alleged to have been made by the appellant. The record does not disclose what statements were to be furnished to appellant. The statement was in rebuttal to direct evidence given by the appellant, and the trial judge so held: It was in no way direct testimony. On direct examination the appellant testified that he had never harmed Barbara in any way. The testimony of Officer Sparks quotes the appellant as saying to him that on one occasion he caught Barbara with two boys, and that he chased the boys, slapped Barbara and choked her into unconsciousness, but stopped short of killing her.

Under these facts, we cannot characterize the action of the trial judge as being an abuse of discretion.

■ The appellant further maintains that it was improper for the trial judge to permit a photograph of the victim which allegedly was duplicative, gruesome and inflammatory. The death of Barbara was brought about by strangulation by the use of an electric-wire extension cord. Commonwealth exhibits # 6 and # 10 each delineate the victim with a white cord of some kind about her neck. However, it is only exhibit # 10 that clearly and explicitly shows the cord to be a white electric extension cord.

In *Woods v. Commonwealth*, Ky., 305 S.W.2d 935 (1957), we said:

" * * * The control of the amount of evidence produced on a particular point would seem to continue as a matter within the inherent power of the court. An abuse of discretion in this respect if shown to be prejudicial should be reviewable. * * * "

The trial judge did not, nor does this court, consider the photograph as being duplicative. As to the photograph's being gruesome and inflammatory, in *Brown v. Commonwealth*, Ky., 558 S.W.2d 599 (1977), we said that in this jurisdiction all photographs of the scene of the crime are admissible, no matter how heinous the crime, to the extent that the photograph that is otherwise admissible does not become inadmis-

sible simply because it is gruesome and the crime heinous. This, we reaffirmed in *Sharp v. Commonwealth*, Ky., 559 S.W.2d 727 (1977). The trial court did not err in admitting exhibit # 10.

 Lastly, it is argued that the Commonwealth's Attorney committed errors of such proportions that the appellant was substantially prejudiced thereby. First, the Commonwealth's Attorney is criticized for his comparison of the death cord to similar electric extension cords found in the appellant's home. This was nothing more or less than a comparison of the similarity of the two extension cords, each of which was properly admitted into evidence, accompanied by the request by the Commonwealth's Attorney for the jurors to consider the similarity. This comparison on the part of the Commonwealth's Attorney and his request to the jury to make a similar comparison were not improper.

Secondly, the Commonwealth's Attorney is charged with telling the jury that it could find the appellant guilty even though the offense was committed in Jessamine County. The trial judge instructed the jury properly. The appellant could be found guilty only if the offense was committed in Fayette County. The portion of the concluding argument of the Commonwealth's Attorney, to which the appellant refers, is more beneficial than detrimental to the appellant. The argument presents a word picture of facilities at appellant's home in Jessamine County which were conducive to the commission of such a crime. If the jury had believed this argument, it would have, under the instructions of the court, had no choice but to find the appellant not guilty. At the conclusion of all of the argument of the Commonwealth's Attorney, counsel for appellant requested that an oral instruction be given to the jury to the effect that if it believes that the crime was committed in the cabin in Jessamine County it would find the appellant not guilty of the commission of the crime in Fayette County. That instruction was rightly refused. It was for the jury to decide whether the crime was committed in Fayette County where the body was found or at some other place. An instruction negating the requirement for a finding that the offense had been committed in Fayette County was not necessary.

The trial court did not err either in admitting the argument of the Commonwealth's Attorney with reference to the electric extension cords or in refusing to give an oral instruction negating the requirement that the offense must have been committed in Fayette County.

The judgment is affirmed.

All concur.