Danny **PEVLOR**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

Supreme Court of Kentucky.

July 6, 1982.

As Modified on Denial of Rehearing
Sept. 21, 1982.

Jack E. Farley, Public Advocate, Kevin M. McNally, M. Gail Robinson, Asst. Public Advocates, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., William L. Davis, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

Danny Pevlor, a minor 17 years of age, was charged in the Juvenile Court of Kenton County, Kentucky, with such criminal activity which, if true, would have constituted the commission of felonies. On December 9, 1976, a hearing was held in the juvenile court to determine whether the case should be transferred to the circuit court and the appellant dealt with under the regular law governing crimes (KRS 208.170). On December 10, 1976, the juvenile court ordered that appellant "be tried and disposed of under the regular law governing crimes as an adult within the Kenton County Circuit Court and this case shall be therefore transferred to the Circuit Court of Kenton County for trial of the offenses of Rape in the 1st degree; 2 counts of Robbery in the 1st degree and Criminal conspiracy to commit robbery in the 1st degree." Subsequent thereto, the Grand Jury of Kenton County, Kentucky, returned indictments against appellant charging him with first-degree rape (KRS 510.040(1)(a)) and two counts of first-degree robbery (KRS 515.020(1)(b)).

Upon a trial in the circuit court, the jury found appellant guilty of first-degree rape, first-degree robbery and criminal attempt to commit first-degree robbery, and sentenced appellant to prison for the periods of ten, ten and five years respectively. Appellant appeals as a matter of right.

On this appeal appellant charges:

I. The waiver of appellant from juvenile to circuit court was not supported by substantial evidence as reflected by the inadequate findings of juvenile court.

We commence with the understanding that the decision to waive a juvenile from the juvenile court to the circuit court is left to the sound discretion of the juvenile court judge. *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The discretion thus vested in the juvenile court is not however unbridled. It is circumscribed by KRS 208.-170. In *Sharp v. Commonwealth,* Ky., 559 S.W.2d 727, 729 (1977), this court summarized the statutory criteria for such transfers as follows:

"1. The seriousness of the alleged offense.

2. Whether the offense was against person or property, with greater weight being given to offenses against persons.

3. The maturity of the child as determined by his environment.

4. The child's prior record.

5. The prospects for adequate protection of the public.

6. The likelihood of reasonable rehabilitation of the child by the use of procedures, services, and facilities currently available to the juvenile justice system."

With these standards to go by, we need to consider the facts complained of surrounding the incident.

The record discloses, and the district court judge was entitled to believe, that the following occurred: On November 25, 1976, at about 3:15 a. m., Linda Meeks and a friend, Gregory Christian, were seated in Linda's car on Riverside Drive, in Covington, Kentucky. Another car occupied by Danny Pevlor, Edward England and Richard Johnson was parked nearby. Appellant and his cohort England, with handguns drawn, approached the Meeks car, England to the side where Linda was sitting and Pevlor to the driver's side where Gregory

was sitting. Both Linda and Gregory were ordered to get out of the car, which they did. After Linda had been robbed and the keys from her car had been taken and thrown away, she was forced at gun point to get in the front seat of the other car. Pevlor, England and Linda were in the front seat; Johnson was in the rear seat. England ordered Linda to remove all of her clothing, which, with guns pointed at her, she did. England then forced Linda to play with him and perform the act of fellatio. Resisting brought a blow to her head with a gun and a threat to blow her brains out if she resisted or refused. After getting in Newport, Kentucky, Linda was forced to get in the rear seat with England, who raped her. Pevlor and England changed places and Pevlor then raped Linda. Pevlor and England again changed placed and England again raped Linda. Johnson then took his turn and raped Linda. While in this act of rape, Linda heard four gunshots. Then Pevlor drove a short distance and stopped. England dragged Linda from the car. He and Pevlor, with Linda carrying only part of her clothing, led her away. Pevlor and England returned to their car, and with Pevlor driving, they hurriedly made their departure.

Linda ran to a nearby shopping area, where she was given assistance and taken to the Newport police station. Linda reported the affair, and within a few hours Pevlor and Johnson were apprehended in Covington, Kentucky. She was at all times during the affair under threats of being killed if she refused to do as she was told. She was bruised on and about her body by her assailants. Linda identified Pevlor and Johnson as two of her assailants and the automobile in which they were traveling as the one in which she was raped and assaulted. After denying having any knowledge of the incident, Pevlor admitted the robbery and intercourse, but excused the acts by saying that they were with Linda's consent.

The record clearly demonstrates that:

1. The seriousness of the offenses cannot be over-emphasized. Rape, robbery, assault and threat of death—these are not

some minor traffic violations. These offenses are grave and cry out for loud rebuke.

2. The offenses were directed at Linda's person. Her person was invaded and horribly mistreated.

3. Pevlor was not some naive child. He was 17 years and six months of age. Irrespective, however, of his minority, he was street wise. These were not his first offenses. He had other juvenile problems.

4. Pevlor's prior record includes auto theft, fighting, truancy, failure to cooperate with parents, guardian, or public officials.

5. Pevlor was under the supervision of the Kenton County Juvenile Court for two years. The court representative said that they could not control Pevlor—he ran free and was street wise. There was no adequate manner to protect the public from him.

6. There are no adequate facilities in Kentucky in which Pevlor could be committed so as to afford a reasonable likelihood of rehabilitation. The representative of the Kenton County Juvenile Court, who was familiar with Pevlor and his condition, recommended that the case be waived to the grand jury. An operator of a home for homeless and delinquent boys in Indiana, who had had Pevlor with him since December 18, 1975, sought to have Pevlor released to his care and custody. He emphasized a real and sincere desire to further attempt to rehabilitate Pevlor.

The juvenile court did not err in waiving the case to the circuit court as authorized by KRS 208.170.

II. Was the grand jury instructed in conformity with the statute?

KRS 208.170(5)(a) provides:

"(5) When the juvenile court so transfers a case to the circuit court:

(a) If a grand jury considers the case and is satisfied there is sufficient evidence to indict the child, it shall be instructed that it may either return an indictment or may return a written report to the circuit court recommending that the child be transferred to the juvenile court. If the court believes that such transfer would be proper, it may order the child transferred to the juvenile court."

Counsel for Pevlor raised the issue of whether the grand jury had been properly instructed. It is his argument that such instructions must be given to the grand jury after it has finally and fully considered the case and determined that there was sufficient evidence to indict, and if given at any other time the statute has not been complied with and the case must be transferred back to the juvenile court. The Commonwealth's Attorney testified at an in-chambers hearing that such instruction was given by him to the grand jury prior to the time that it voted on the case. This is sufficient compliance with the statute for this is the only time the Commonwealth's Attorney could properly instruct since he is disqualified to be present during the secret vote of the grand jury. So long as the grand jury knows of its options prior to the time it votes on returning an indictment, it has had full knowledge of its prerogatives. That is all that is required. The grand jury was properly instructed.

III. Did the trial court deprive appellant of a fair trial by permitting Dr. Gunn to testify that Linda Meeks had been the victim of sexual intercourse by force?

Dr. Gunn is a medical doctor who has specialized in obstetrics and gynecology. He saw Linda in the emergency room of the hospital within a few hours following her rape, robbery and assault. He found bruises on her body and found sperm in her vagina. A history of the incident had been taken from Linda and she had undergone a physical examination. Dr. Gunn was asked whether his findings were compatible with an incident of forcible intercourse or rape. Counsel for Pevlor objected to the question; the objection was overruled. Dr. Gunn was permitted to testify, and he answered in the affirmative. The doctor, by reason of his special skills and special training, was quali-

fied to conclude that the bruises were induced by force and the doctor most assuredly was capable of testifying of the presence of sperm in her body. It was thus only logical, and it follows as a matter of course, that someone by the use of force had intercourse with Linda. Dr. Gunn did not associate Pevlor with the execution of the force on Linda or with having intercourse with her. He merely stated that her condition was consistent with intercourse induced by force.

Considering the facts as presented in this case, it was competent for Dr. Gunn, by reason of his expertise, to express his personal opinion that Linda had undergone forcible intercourse. The trial judge did not err in permitting Dr. Gunn to thus testify.

IV. Did the trial judge improperly define reasonable doubt and properly refuse to give appellant's tendered instructions on burden of proof?

■ The trial commenced on February 10, 1977, and concluded on February 18, 1977, the fourth day of the trial. The court instructed the jury as to each separate count of Pevlor's indictment that the jury could not find him guilty unless the jury "believe from the evidence, beyond a reasonable doubt, all of the following . . . ." Thence followed the elements of the offenses. The court thereafter defined reasonable doubt as follows: "The term 'reasonable doubt', as used in these instructions, means: a substantial doubt, a real doubt, in that you must ask yourself not whether a better case might have been proven, but whether, after hearing all the evidence, you doubt that the defendants are guilty." Counsel for appellant moved the court to instruct the jury that "(t)he Commonwealth has the burden of proving every element of an offense beyond a reasonable doubt, and if upon the whole case you have a reasonable doubt as to the defendant's guilt, or a reasonable doubt that any element of the offense has not been proved, you shall find him not guilty."

By thus defining reasonable doubt and by refusing to give the tendered instruction, appellant argues that the court violated his rights under the 6th and 14th amendments to the United States Constitution.

RCr 9.56, at the time of this trial, provided that the jury should be instructed that if there is a reasonable doubt of the defendant's being proven to be guilty, he is entitled to an acquittal.

The instruction defining reasonable doubt has recently been articulated upon by the Supreme Court of the United States in *Taylor v. Kentucky,* 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). This court, recognizing the shortcomings of RCr 9.56, amended it, effective July 1, 1978, to read as follows:

"Reasonable doubt.—(1) In every case the jury shall be instructed substantially as follows: 'The law presumes a defendant to be innocent of a crime, and the indictment shall not be considered as evidence or as having any weight against him. You shall find the defendant not guilty unless you are satisfied from the evidence alone, and beyond a reasonable doubt, that he is guilty. If upon the whole case you have a reasonable doubt that he is guilty, you shall find him not guilty.'

(2) The instructions should not attempt to define the term 'reasonable doubt.' "

*Kentucky v. Whorton,* 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979), had under review the propriety of instructions required and those given pursuant to RCr 9.56. The United States Supreme Court stated:

"In short, the failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution. Under Taylor, such a failure must be evaluated in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial."

Although *Whorton,* supra, talks about the presumption of innocence, that issue is so closely related to the reasonable doubt requirement that the reasoning of *Whorton* is equally applicable to reasonable doubt.

Counsel for appellant complains that the instruction given by the trial court defining reasonable doubt improperly equated reasonable doubt with substantial doubt. True, the instructions defining reasonable doubt did equate it with substantial doubt; however, the instruction requiring a belief of guilt beyond a reasonable doubt does not in and of itself violate the United States Constitution.

Having reviewed and considered the matters specified in *Kentucky v. Whorton,* supra, we are of the opinion that in the light of the totality of the circumstances, the trial court's refusal to give to the jury the instructions tendered by counsel for appellant did not prejudice or deprive him of his due process right to a fair trial.

V. Did the Commonwealth prove the proper venue for the trial to be in Kenton County?

■ The evidence unequivocally discloses that the sordid affair commenced in Covington, Kenton County, Kentucky, and continued in Newport, Campbell County, Kentucky. This issue is disposed of in *Moore v. Commonwealth,* Ky., 523 S.W.2d 635 (1975), wherein this court wrote:

"According to one of the victims, appellants abducted the victim in Jefferson County and took her to Oldham County where they forced her to have sexual intercourse with them. KRS 452.550 provides: 'Where an offense is committed partly in one and partly in another county, *or if acts and their effects constituting an offense occur in different counties, the prosecution may be in either county in which any of such acts occurs.'* (Emphasis added.) The initial abduction was a sequential part of carrying out the purpose of having carnal knowledge of their victim. Accordingly venue was in either Jefferson County or Oldham County."

Counsel for appellant, recognizing the applicability of *Moore,* argues that it should be overruled. The court is not so inclined. A proper venue was in Kenton County.

VI. Did the trial court commit error by limiting defense questions during cross-examination of the prosecuting witness?

■ Counsel for England, in his cross-examination of Linda, interrogated her relative to the amount of money she had on her person at the time she was assaulted. The transcript of testimony reveals that Linda had been permitted to answer 13 such questions, and the Commonwealth's objection went to the line of questioning. The amount of money that Linda had with her on the occasion in question had nothing to do with the guilt or innocence of the appellant. After the court sustained the objection to further interrogation, no further questions were asked relating to that character of evidence and no avowal was made which would reflect the character of further examination or any answers which appellant's counsel expected to receive.

The trial judge has a wide discretion to admit or refuse evidence, and we cannot say that he abused his discretion in limiting the extent of the proffered testimony.

Counsel for appellant charges that he should have been permitted to confront Linda with testimony contrary to that which she had given so that she could have had an opportunity to change her testimony. On cross-examination of Linda, appellant's counsel asked her if she would be surprised to learn that Greg Christian had identified Rick Johnson as being the person with the gun who came to the car. The Commonwealth's Attorney objected because "Your Honor. The testimony of Greg Christian was that he didn't know who the other one was."

A review of the transcript of testimony discloses that the Commonwealth's Attorney was correct. Greg made no such statement. He testified that both men had guns. He could and did identify England, but he could not identify the other person. The court did not err in this respect.

VII. Was appellant deprived of a fair trial or due process by the Commonwealth's introduction of evidence that Richard Johnson was tried and convicted on the same charges for which appellant was being tried?

■ The Commonwealth's Attorney asked Officer Tom Henry the following question: "And Mister Johnson has since been tried and convicted on these charges in Juvenile Court," to which Officer Henry responded: "Yes, sir, he was adjudicated in Juvenile Court." No objection was made by anyone to this question or answer. In *Wilson v. Commonwealth,* Ky., 601 S.W.2d 280, 283 (1980), this court wrote:

"We have consistently held that for an issue to be considered on appeal, it must have been raised at the trial level so that the trial judge can have an opportunity to pass on the issue. No objection having been made to the testimony now being complained of, we deem the issue as having been waived."

No objection having been made by counsel for appellant, the issue is waived.

VIII. Did the Commonwealth prove the elements of complicity in attempting first-degree robbery of Greg Christian?

■ Pevlor and England were jointly indicted for first-degree robbery. KRS 515.-020(1)(b). Both were convicted of criminal attempt to commit first-degree robbery, a lesser included offense.

Counsel for Pevlor argues that the Commonwealth failed to prove that appellant was in anyway involved in the attempted robbery. We must bear in mind that "If under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal." *Trowel v. Commonwealth,* Ky., 550 S.W.2d 530 (1977).

Linda identified Pevlor as one of the two persons who attempted to rob her friend Greg Christian. When we consider this testimony, which the jurors had a right to do, together with the evidence as a whole, it would not be clearly unreasonable for a jury to find Pevlor guilty. Consequently, he was not entitled to a directed verdict of acquittal.

IX. Appellant was not deprived of his right of confrontation by the introduction of a confession made by England which implicated the appellant Pevlor.

■ Officer William Robinson of the Covington, Kentucky, police force testified in great detail concerning the confession which England had made. The confession detailed the participation not only of himself but of Pevlor and Johnson. Counsel for appellant did not object to any of the testimony of Officer Robinson that inculpated Pevlor. Not having objected to or challenged the propriety of this testimony at the time it was given, the appellant has waived any alleged error. *Wilhite v. Commonwealth,* Ky., 574 S.W.2d 304 (1978).

X. Did the trial court err by imposing consecutive sentences?

■ The question of whether sentences shall run consecutive or concurrent is a matter within the sound discretion of the trial judge. *Wilson v. Commonwealth,* Ky., 601 S.W.2d 280 (1980); *Wilhite v. Commonwealth,* Ky., 574 S.W.2d 304 (1978).

The "Trial Order and Judgment" entered on March 9, 1977, provides:

"Under date of March 7, 1977, at the hour of 10:00 a.m. o'clock, the defendants, Pevlor and England, were again present in open court for the purpose of formal sentencing. Also present were Mr. Brannen for defendant Pevlor, and Mr. Schroder for defendant England. Mr. Sanders was present for the Commonwealth. The Court inquired whether legal reason might be shown why sentence should not be pronounced and judgment entered on verdict of jury. No such reason having been assigned by either defendant, the Court afforded each defendant, and his counsel, opportunity to make a statement.

The Court heard and considered the statements made by Mr. Brannen on behalf of the defendant Pevlor. Moreover, the Court heard and considered the testimony of three witnesses offered by defendant Pevlor in furtherance of his motion for probation or, in the alternative, for the Court to exercise its discretionary authority afforded the Court under KRS 208.180. No statements were made by or on behalf of the defendant England. The Court having also considered the presentence reports relating to each defendant, the Court proceeded to pronounce sentence, in open court . . . ."

The presentence investigative report required by KRS 532.050 details Pevlor's juvenile court record as follows:

| Date Arrested | Court | Offense | Disposition |
|---|---|---|---|
| 5/2/72 | Kenton Co. Juvenile | Breaking & Entering | Dism. |
| 10/28/73 | Juvenile | Vandalism | Filed Away |
| 10/24/73 | Juvenile | Malicious Burning | Continued |
| 6/28/74 | Juvenile | Grand Larceny; Rec. & Poss. of Stolen Goods | Cont. Indefinitely |
| 7/30/74 | Juvenile | Auto Larceny | Probated |
| 10/20/74 | Juvenile | Apprehended as Runaway | |
| 10/28/74 | Juvenile | Truancy | |
| 10/11/75 | Juvenile | Failure to Disperse | W & R |
| 11/25/76 | Kenton Co. | Kidnapping, Rape, 1st Deg., Robbery, 1st. Deg., 2 Counts, Criminal Conspiracy to Commit Robbery, 1st Deg. | Pres. Chge. |

Actions speak louder than words, and this court is not convinced that the trial court erred in providing for the three sentences to run consecutively.

XI. Did the court follow the proper sentencing procedure and were appellant's convictions improperly described in the judgment?

KRS 532.050 provides and sets forth the pre-sentencing procedure for felony convictions. The record before this court reflects that the trial judge did not follow the procedure outlined and delineated in KRS 532.050; consequently, this action is remanded to the Kenton Circuit Court for sentencing in keeping with KRS 532.050.

Pevlor charges that the trial court entered an improper judgment and inaccurately described the robbery offenses for which he was charged, convicted and sentenced.

Count I of the indictment charges Pevlor with first-degree robbery of Greg, and Count II of the indictment charges Pevlor with first-degree robbery of Linda. The jury heard the evidence and, in its wisdom, found Pevlor guilty of criminal attempt to commit first-degree robbery of Greg under Count I, while at the same time finding, as it had a right to do, Pevlor guilty of first-degree robbery of Linda under Count II. Counsel for appellant charges that at the most appellant would be guilty of complicity to first-degree robbery and complicity to attempt first-degree robbery. The jury was not of the same mind, and we do not find any error in the inaccuracies in the final judgment.

The judgment of the Kenton Circuit Court is affirmed.

All concur.