COMMONWEALTH vs. QUINCY Q., a juvenile.

Plymouth. January 12, 2001. - August 15, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Youthful Offender Act. Indecent Assault and Battery. Delinquent Child. Evidence,* Fresh complaint, Videotape, Expert opinion, Opinion, Credibility of witness, Relevancy and materiality. *Witness,* Corroboration, Credibility.

A judge erred in denying a pretrial motion to dismiss a youthful offender indictment for indecent assault and battery that had been sought in reliance on "the infliction or threat of serious bodily harm" component of G. L. c. 119, § 54, where the grand jury lacked sufficient evidence to indict the juvenile as a youthful offender under c. 119, § 54, because no evidence had been presented of the infliction or threat of serious bodily harm. [862-864]

Discussion regarding the procedures and proof necessary to adjudicate an individual a youthful offender. [864-867]

At the trial on an indictment charging the defendant as a youthful offender on charges involving sexual assault, the judge erred in admitting as evidence of fresh complaint a videotape recorded by the complainant's parents depicting their child answering questions posed by them and the defendant's mother where, while the videotape recording was offered as evidence of the complainant's fresh complaint, it showed the complainant herself, not someone other than the complainant, describing the details of the sexual assault, thus corroborating her own testimony and bolstering her own credibility, and where the admission of the inadmissible hearing was not merely cumulative of other properly admitted evidence. [867-870] IRELAND, J., dissenting, with whom Spina and SOSMAN, JJ., joined.

At the trial of a child sexual abuse case, the judge erred in allowing the prosecutor to refresh the child complainant's memory outside the jury's presence following a "brief break" requested by the prosecutor so that the child could compose herself. [870-871]

At the trial of a child sexual abuse case, the judge did not err in permitting expert testimony from a physician, who had examined the child complainant, which the defendant alleged compared the physical findings of the complainant's examination to the physical findings in most of the cases of children alleged to have been sexually abused, and vouched for the complainant's credibility, where the physician had not also provided fresh complaint testimony, did not explicitly connect the complainant to the general experience of sexually abused children, and did not comment on the complainant's truthfulness. [871-873]

This court concluded that certain testimony of the father of a child complainant in a sexual abuse case should not be admitted at any retrial, including

statements describing the reason the defendant's mother came to his house the day a videotape recording was made that were not relevant to any issue at trial and constituted an improper endorsement of the complainant's credibility, and statements regarding a conversation with the complainant that exceeded the permissible scope of fresh complaint evidence by providing his own interpretation of the complainant's words. [873-875] IRELAND, J., dissenting, with whom SPINA and SOSMAN, JJ., joined.

This court concluded that certain statements of the father of the child complainant in a sexual abuse case to a coworker should not be admitted at any retrial, where the statements constituted inadmissible hearsay, were outside the father's knowledge, or lacked relevance. [875]

INDICTMENT received and sworn to in the Superior Court Department on August 21, 1998.

After the indictment was filed in the Brockton Division of the Juvenile Court Department, motions to dismiss were heard by *Louis D. Coffin*, J., and the case was tried before *John P. Corbett*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John T. Ouderkirk, Jr.*, for the defendant.

*Christina L. Crowley*, Assistant District Attorney, for the Commonwealth.

*Patricia A. O'Neill*, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

COWIN, J. The defendant was indicted as a youthful offender on two charges of forcible rape of a child under the age of sixteen years and two charges of indecent assault and battery of a child under the age of fourteen years. Prior to trial, the defendant filed three motions to dismiss, all of which were denied by a motion judge.[1] At the close of the prosecution's case, the defendant filed a motion for a required finding of not guilty, which the trial judge granted to the extent that the rape charges alleged the use of force. The jury found the defendant not guilty on both charges of rape and one of the charges of

---

[1]The first motion to dismiss challenged the sufficiency of the evidence submitted to the grand jury on the rape charges; the second contested the defendant's indictment as a "youthful offender"; and the third claimed that the charges were duplicative.

indecent assault and battery. The defendant, however, was adjudicated a youthful offender by reason of the remaining charge of indecent assault and battery.

On appeal from that adjudication, the defendant claims error in the following: (1) the motion judge's failure to dismiss the youthful offender indictment under G. L. c. 119, § 54; (2) the admission in evidence of a videotape depicting the complainant's "fresh complaint"; (3) the trial judge's ruling that the complainant was competent to testify; (4) allowing the prosecution to refresh the complainant's memory outside the jury's presence; (5) permitting expert testimony from a physician who had examined the complainant; (6) the admission of various aspects of the testimony of the complainant's father; and (7) the trial judge's instructions to the jury on reasonable doubt. We conclude that the motion judge erred in denying the defendant's motion to dismiss the youthful offender indictment charging indecent assault and battery. We also conclude that the admission of the videotape as evidence of fresh complaint constitutes reversible error. Because of our conclusions with respect to the motion to dismiss and the admission of the videotape, we need not decide whether the defendant's other claims of error, either alone or taken together, would require a new trial; however, we address those claims of error that may arise during a new trial of a delinquency complaint for indecent assault and battery or that raise significant questions that we believe require comment. Accordingly, we reverse the adjudication of the defendant as a youthful offender and remand the matter for further proceedings consistent with this opinion.

1. *Background.* All the offenses occurred between October 1, 1996, and March 5, 1998, and involved the same complainant, a very young girl. The incidents took place between the time the complainant was three and five years of age; the defendant was fifteen and sixteen years old. There was evidence that, while assisting at his mother's home day care center, the defendant touched the complainant's vagina on approximately ten different occasions. The defendant also had the complainant touch his penis, and told her never to tell anyone. The abuse was revealed in early March, 1998, when the complainant remarked to her father that "she had a big butt crack." A few days later, the

complainant's parents asked their daughter about the unusual comment and, during the course of their questioning, she revealed the defendant's misconduct. The next morning, the complainant and her parents met with the defendant's mother to discuss the matter. The parents videotaped the conversation, and the complainant again described the instances of abuse. At trial, the complainant and her parents, among others, testified and the jury viewed an edited version of the videotape. The jury convicted the defendant of indecent assault and battery of a child under the age of fourteen years.

2. *Youthful Offender Statute.*

a. *Indictment.* Prior to trial, the defendant filed a motion to dismiss the youthful offender indictment for indecent assault and battery, which was denied. He claimed then, as he does now, that the grand jury lacked sufficient evidence to indict him as a youthful offender under G. L. c. 119, § 54, because no evidence had been presented of "the infliction or threat of serious bodily harm," one of the statutory prerequisites of a youthful offender indictment.[2] For this reason, the defendant contends that the motion judge erred in denying his motion to dismiss.[3] We agree.

In 1996, the Legislature enacted the youthful offender statute, G. L. c. 119, § 54, as amended through St. 1996, c. 200, § 2, permitting prosecutors to proceed by indictment if the following statutory requirements are present: (1) the alleged offense was committed while the individual was between the ages of fourteen and seventeen years; (2) if he were an adult, the offense would be punishable by imprisonment in the State prison (i.e., a felony); and (3) the individual was previously committed to the department of youth services, *or* the alleged offense involved certain enumerated firearms violations, *or* it involved "the infliction or threat of serious bodily harm." G. L. c. 119,

---

[2]The defendant does not argue on appeal that there was insufficient evidence regarding the other statutory requirements under G. L. c. 119, § 54.

[3]The Commonwealth claims that the defendant challenges the sufficiency of the evidence for the indecent assault and battery charge for the first time on appeal. Although the defendant did not challenge the sufficiency of the evidence as it pertains to the underlying crime of indecent assault and battery, he did challenge the sufficiency of the evidence to indict him as a youthful offender. See note 1, *supra.*

§ 54. See *Commonwealth* v. *Clint C.*, 430 Mass. 219, 225 (1999). When the prosecution fails to present to the grand jury sufficient evidence to satisfy these requirements, a judge may dismiss the indictment. See *id.* at 224. (Legislature provided prosecutor with discretion to seek youthful offender indictment "as long as the statutory prerequisites are met").

The label " '[y]outhful offender' refers not to a status necessary before an indictment may be brought by a prosecutor, but to a status that is an outcome of indictment and adjudication." *Commonwealth* v. *Clint C.*, *supra* at 222 n.4. There is no requirement that the infliction or threat of serious bodily harm be an element of the crime itself. See *id.* at 225. However, where a prosecutor seeks a youthful offender indictment relying on "the infliction or threat of serious bodily harm" component of the statute, the conduct constituting the offense must involve the infliction or threat of serious bodily harm. See *id.*

There was no evidence presented to the grand jury in this case that the conduct constituting the alleged indecent assault and battery involved the infliction or threat of serious bodily harm. The evidence presented was that the defendant touched the complainant's vagina and buttocks and made her touch his penis, but, as the motion judge noted, there was "no evidence that the defendant overtly threatened [the complainant] or that serious bodily injuries were actually inflicted."

Moreover, the touching involved in this case is not sufficiently invasive in nature (as compared to penetration) to create the threat of serious bodily harm. Cf. *Commonwealth* v. *Clint C.*, *supra* at 226. While the defendant was alleged to have penetrated the complainant, that conduct supported his indictment for rape (with respect to which he was subsequently acquitted), not indecent assault and battery. It is the touching of the complainant's vagina and buttocks that supports a charge for indecent assault and battery.[4]

We said in *Commonwealth* v. *Clint C.*, *supra*, that "[t]he

---

[4]It was proper to join the indecent assault and battery charges with the rape charges for purposes of one trial. See G. L. c. 119, § 54; Mass. R. Crim. P. 9 (a), 378 Mass. 859 (1979). However, contrary to the Commonwealth's suggestion, joinder does not transform a charge that must be brought as a complaint into a charge that may be brought as an indictment.

juvenile's position of authority, the age difference between the juvenile and the victim, and the vulnerability of the victim are sufficient to support a youthful offender indictment." However, that statement was made in the context of an indictment charging statutory rape of a very young child. Those factors, combined with the act of penetration, justified the indictment in that case. Although such factors are also present in this case, they were here combined with a touching that did not involve the infliction or threat of serious bodily harm. Accordingly, the motion judge erred in denying the defendant's motion to dismiss insofar as it related to the sufficiency of the evidence to indict the defendant as a youthful offender for indecent assault and battery. On remand, the prosecutor must proceed by complaint, rather than by indictment. Cf. *Commonwealth* v. *Funches*, 379 Mass. 283, 296-297 (1979) (no new trial where Commonwealth had "fair opportunity to offer whatever proof it could assemble").

b. *Adjudication.* Although we have concluded that the indictment in this case should have been dismissed, because uncertainty may exist, we provide some guidance on the procedures and proof necessary to adjudicate an individual a youthful offender.[5] Where, as here, "there is a public interest in obtaining a prompt answer to the question, and when the answer to be given is reasonably clear," we need not withhold our views. *Commonwealth* v. *Clint C.*, *supra* at 226. See *Gurry* v. *Board of Pub. Accountancy*, 394 Mass. 118, 126 (1985).

Recently, in *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000), the Supreme Court of the United States held that a State hate crime statute, which authorized an increase in the maximum prison sentence based on a judge's finding that the defendant acted with the purpose to intimidate because of, inter alia, race, violated the due process clause of the Fourteenth Amendment to the United States Constitution. The Court concluded that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

Similar to the New Jersey hate crime statute, the youthful of-

---

[5]At our request, the parties and the amici have fully briefed this issue.

fender statute authorizes judges to increase the punishment for juveniles convicted of certain offenses beyond the statutory maximum otherwise permitted for juveniles, if the requirements set forth in G. L. c. 119, § 54, have been satisfied. See *Commonwealth* v. *Dale D.*, 431 Mass. 757, 759 (2000) ("A juvenile indicted as a youthful offender faces substantially greater penalties than a juvenile proceeded against by complaint as a delinquent").[6] We recognize that a juvenile court system, in which juveniles are given preferential treatment, is not constitutionally required. See *Commonwealth* v. *Wayne W.*, 414 Mass. 218, 223 (1993) ("A State that elects to commit to its judiciary the responsibility of determining whether [an individual] will be tried as a juvenile or an adult . . . must observe only the constitutional due process right of essential fairness"). However, once the Legislature enacted a law providing that the maximum punishment for delinquent juveniles is commitment to the Department of Youth Services (department) for a defined time period, see G. L. c. 119, § 58, any facts, including the requirements for youthful offender status, that would increase the penalty for such juveniles must be proved to a jury beyond a reasonable doubt. See *Apprendi* v. *New Jersey, supra.* Accordingly, if the Commonwealth determines to proceed against a juvenile by indictment, it must present at the grand jury stage sufficient evidence of the underlying offense to warrant a finding of probable cause that the underlying crime has been committed, *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982), as well as sufficient evidence that the requirements set forth in G. L. c. 119, § 54, have been met.[7]

The Commonwealth may seek to join related offenses, including those properly brought by indictment and those brought by complaint, in one proceeding for purposes of trial under G. L.

---

[6]Pursuant to G. L. c. 119, § 58, if a child is adjudicated a youthful offender, the judge may, inter alia, sentence the child as provided by law (e.g., the punishment provided for adult offenders). By contrast, if a child is adjudicated a delinquent child, the most severe penalty that may be imposed is commitment to the custody of the Department of Youth Services.

[7]Of course, a motion to dismiss would lie for failure to present sufficient evidence of the requirements of G. L. c. 119, § 54, as well as for a failure to present sufficient evidence of the underlying offense.

c. 119, § 54, and Mass. R. Crim. P. 9 (a), 378 Mass. 859 (1979). Joinder is especially appropriate in cases such as the present one. A child complained of as a delinquent or indicted as a youthful offender has a right to a jury trial pursuant to G. L. c. 119, § 55A.

At trial of offenses brought by indictment, the Commonwealth, of course, must prove to a jury beyond a reasonable doubt the elements of the underlying offense. It also must prove to a jury beyond a reasonable doubt those requirements set forth in G. L. c. 119, § 54 (i.e., that the child was between the ages of fourteen and seventeen years when the alleged offense was committed; the offense is punishable by imprisonment in State prison; and the child was previously committed to the department, the alleged offense involves certain enumerated firearms violations, or the alleged offense involves the infliction or threat of serious bodily harm).[8]

The judge must instruct the jury that, in order to adjudicate the defendant a youthful offender, they must determine first whether the Commonwealth has proved beyond a reasonable doubt the elements of the underlying offense, and, if they so conclude, they must also determine whether the Commonwealth has proved beyond a reasonable doubt the requirements of G. L. c. 119, § 54. Certain components of the statute will be met as a matter of law by conviction of the underlying charge (i.e., its status as a felony, and, in some cases, as one of the enumerated firearms violations). (The judge should not instruct the jury regarding such components). In many cases, the facts establishing the remaining requirements may not be in dispute. The parties, for example, may stipulate to the defendant's age. (Again, no instruction is necessary regarding any such established fact. See *Commonwealth* v. *Triplett*, 398 Mass. 561, 570 [1986].) Any fact not so established must be resolved by the jury. As a practical matter, it would appear that usually only the issue of

---

[8]The defendant may file a motion for a required finding of not guilty as to the youthful offender component if the Commonwealth has not presented sufficient evidence at trial to support the youthful offender indictment. If such motion is allowed, the underlying offense will thereafter be treated as a delinquency complaint.

the infliction or threat of serious bodily harm will be contested.[9]

If the jury conclude that the defendant is guilty of the offense charged and that the requirements under G. L. c. 119, § 54, have been met, the defendant is adjudicated a youthful offender and is to be sentenced accordingly. If, however, the jury find that the defendant is guilty of the underlying offense but that the requirements of G. L. c. 119, § 54, have not been satisfied, the defendant is adjudicated a delinquent child and shall be sentenced as such.[10]

3. *Videotape as fresh complaint.* The prosecution offered as evidence of the complainant's fresh complaint a videotape recorded by the complainant's parents depicting their child answering questions posed by them and the defendant's mother. Both the defendant and the judge raised concerns about the videotape, but ultimately, over the defendant's objection, an edited version of the videotape was played to the jury.[11] On appeal, the defendant challenges the admission of this videotape.

Under the fresh complaint doctrine, an out-of-court statement seasonably made by the complainant after a sexual assault is admissible as part of the prosecution's case-in-chief. See *Commonwealth* v. *Licata*, 412 Mass. 654, 657 (1992). Evidence of the complaint is admissible only to corroborate the complainant's testimony. It is not admissible to establish the truth of the complaint itself. See *Commonwealth* v. *Peters*, 429 Mass. 22, 27 (1999), and cases cited.

We made clear in *Commonwealth* v. *Peters, supra* at 30, that a "complainant in a sexual assault case may testify *only* to the

---

[9]Any issues regarding requirements under G. L. c. 119, § 54, that remain in dispute must also be included on the verdict slip. For example, the slip should ask (1) whether the defendant is guilty or not guilty of the underlying offense charged; and (2) if the defendant is guilty, whether the Commonwealth has proved the infliction or threat of serious bodily harm (assuming that other issues have been resolved either by stipulation [such as age] or because the jury verdict itself indicates the necessary finding [of felony and, in certain cases, enumerated firearms violations]).

[10]For those offenses brought by complaint, but joined with offenses brought by indictment, the procedures for delinquency complaints set forth in G. L. c. 119, §§ 52-84, must be followed.

[11]The omitted portion depicted the adults urging the child to "tell . . . what happened."

fact that a fresh complaint was made and to whom it was made" and "should not be allowed to testify about the details of the complaint" (emphasis in original). "[T]estimony as to the details of the complaint should be left to the fresh complaint witness who *heard* the complaint" (emphasis added). *Id.* Admitting the videotape in this case is directly contrary to the substance of *Commonwealth* v. *Peters.* The videotape was offered as evidence of the complainant's fresh complaint, yet it shows the complainant herself, *not* "someone other than the complainant," describing the details of the sexual assault. *Id.* at 31.

The Commonwealth argues that the videotape did not show the complainant "testifying," but showed the fresh complaint itself. However, when the videotape was played to the jury, they heard testimony out of the mouth of the complainant, not a fresh complaint witness. Whether the complainant describes the details of the complaint in court on the witness stand or in a videotape, the result is the same: the complainant herself provides the details of the complaint directly to the jury, a result that we expressly stated in *Commonwealth* v. *Peters, supra* at 30, "should not be allowed."[12]

We continue to permit the admission of fresh complaint "on the ground that a victim's failure to make prompt complaint might be viewed by the jury as inconsistent with the charge of sexual assault . . . and in the absence of evidence of complaint the jury might assume that none was made." *Commonwealth* v. *Licata, supra* at 658, quoting *Commonwealth* v. *Bailey,* 370 Mass. 388, 392 (1976). The purpose of allowing a fresh

---

[12]In *Commonwealth* v. *Lavalley,* 410 Mass. 641, 642 (1991), we held that the trial judge's decision to allow the jury to view a videotape "recording a statement by the victim to the police describing the attack" as evidence of fresh complaint was not prejudicial to the defendant. We did not hold as a general matter that such videotapes would be admissible as fresh complaint evidence. Rather, we stated in *Lavalley* that the statements on the videotape did not differ from the testimony of the five fresh complaint witnesses or the victim's in-court testimony. See *id.* at 645. We thus concluded that the fact that "the fresh complaint evidence was presented to the jury through the use of a videotape in which the victim can be seen telling a police officer about the incident in a relatively composed manner, did not by itself make the evidence other than cumulative in nature and did not, therefore, make it prejudicial to the defendant." *Id.* The clear implication of the *Lavalley* decision is that the videotape was not admissible; however, on the record before the court, the videotape was not so prejudicial as to require a reversal.

complaint witness (i.e., someone other than the complainant) to testify regarding the details of the complaint (as described to the witness by the complainant) "is to corroborate the victim's testimony, namely, as it relates to the credibility of the victim's testimony at trial." *Commonwealth* v. *Licata, supra* at 660. Admitting the videotape permitted the complainant to corroborate her own testimony and bolster her own credibility. "We can find no decision, or other authority, which permits a complainant to engage in self-corroboration." *Commonwealth* v. *Peters, supra* at 28.

Nonetheless, the admission of inadmissible hearsay will not constitute prejudicial error if it is merely cumulative of other properly admitted evidence. See *Commonwealth* v. *Esteves,* 429 Mass. 636, 640 (1999). Here, however, the statements recorded on the videotape cannot be characterized as "merely cumulative" of the testimony of the fresh complaint witnesses. The videotape recorded not only statements from the complainant (which could be repeated in court by the fresh complaint witnesses), but also the complainant's manner and speech at that time as well as responses from other persons present that day, including the complainant's mother and father and the defendant's mother. Indeed, the defendant's mother is shown encouraging and supporting the complainant, telling her, "You're doing wonderful," and "I promise, honey, you're still my girl. . . . I love you to pieces. . . . That's important to know." Such statements would not be admissible as part of fresh complaint. The entire tone of the videotape is supportive of the complainant and could serve only to enforce her credibility. As a result, we cannot fairly say that "in considering the [credibility of the complainant], the jurors primarily relied on properly admitted evidence to make their decision."[13] *Id.,* quoting *Commonwealth* v. *Cyr,* 425 Mass. 89, 95 (1997). On remand, the videotape may not be admitted as evidence of the

---

[13]By comparison, in *Commonwealth* v. *Lavalley, supra* at 645, the videotape recorded the victim "telling a police officer about the incident in a relatively composed manner." The videotape also recorded the questions and responses of the police officer, but the officer was an objective outsider, with no personal interest in the matter, a person whose comments were unlikely to bolster the victim's credibility or prejudice the defendant.

complainant's fresh complaint[14]; however, the complainant may testify as to the fact that a complaint was made and to whom it was made, and the witnesses who heard the complaint may testify as to what the complainant said.[15] See *Commonwealth* v. *Licata*, *supra* at 658-660.

4. *Refreshing the complainant's recollection.* Although we reverse the adjudication of the defendant as a youthful offender because of the errors regarding the indictment and the admission of the videotape, we address those remaining issues that may arise at retrial or that are sufficiently significant to warrant discussion. Midway through the child's direct examination, the child appeared to have difficulty answering the prosecutor's questions. The prosecutor requested a "brief break" so that the witness could compose herself and drink some water. The judge ordered the recess and permitted the prosecutor to "refresh this witness's recollection with prior statements" before returning. However, concerned because the jury would not view this refreshing recollection "process," the judge directed the prosecutor to inform the jury of her interactions with the child during the recess. The prosecutor agreed to preface her questions to the complainant after the recess by asking, "Do you remember talking about [this matter] upstairs?"[16] Before resuming the trial, the judge explained to the jury that witnesses'

[14]We therefore need not address the defendant's claims that the videotape violated his right of confrontation or that the admission of the videotape in addition to testimony from three fresh complaint witnesses constituted impermissible "piling on" of evidence.

[15]We disagree with the defendant's contention that the complaint was not "fresh" because approximately ten weeks elapsed between the alleged offense and the complaint. Whether a complaint is sufficiently "fresh" lies within the sound discretion of the trial judge, and the test is whether the complainant's actions were reasonable given the particular circumstances of the case. See *Commonwealth* v. *Amirault*, 404 Mass. 221, 228-229 (1989), and cases cited ("Courts have not insisted on great promptness for fresh complaints in prosecutions involving child sexual abuse"). During the period of abuse, the complainant was between three and five years old. The defendant told her not to tell anyone. See *Commonwealth* v. *Comtois*, 399 Mass. 668, 673 (1987). As a babysitter and participant in her day care, the defendant occupied a supervisory role in the complainant's life. See *id.* at 674. Although this was not the child's first complaint — that being made to her parents the previous night — the delay was not prolonged enough to compromise its freshness.

[16]There was some indication before the recess that the prosecutor was planning to show the complainant the videotape made by her parents in order to

recollections are traditionally refreshed by permitting them to read to themselves while on the stand prior statements they have made. But because this witness could not yet read, he stated that he was deviating from the usual practice by permitting the prosecutor "to go through a similar process outside of [the jury's] hearing." The defendant did not object and ultimately acquiesced to this arrangement.

Notwithstanding the difficult circumstances, it was error to allow the prosecutor to refresh the complainant's recollection outside the jury's presence. See, e.g., *Commonwealth* v. *Daye*, 393 Mass. 55, 65 n.11 (1984). The possibility that the prosecutor, inadvertently or not, suggested to the child the desired substance of her testimony during the break and that the complainant tried to accommodate the prosecutor when she returned to the stand is too great for us to sanction such a process. When the prosecutor reviewed the complainant's prior statements with her during the recess, the child may not have understood that counsel was merely attempting to refresh her recollection, rather than "gain [the child's] admission that [her earlier statements were] true" or have her recite the contents of these earlier statements. *Commonwealth* v. *Walker*, 42 Mass. App. Ct. 14, 19, *S.C.*, 426 Mass. 301 (1997). The prosecutor instead could have refreshed the complainant's recollection in the jury's presence by asking her whether she remembered making a certain statement previously. Cf. *Commonwealth* v. *Melchionno*, 29 Mass. App. Ct. 939, 941 (1990) (permissible to refresh child witness's recollection by prior testimony while child was on witness stand). Such a procedure would have permitted the jury an opportunity to assess whether the witness actually remembered the statement or was being prompted to give a particular answer.[17]

5. *The expert witness.* At trial, Dr. Andrea Van Deven, a pediatrician at Children's Hospital who examined the complainant, testified that the complainant's examination was "com-

refresh her recollection. After the recess, however, the prosecutor explained that she only talked with the complainant about whether she remembered making certain statements previously; the prosecutor stated that she did not play the videotape during the recess.

[17]The procedure is similar to that utilized with any witness who cannot read or cannot read English.

pletely normal." She also stated that, in general, the majority of girls examined for possible sexual abuse have "normal" findings (i.e., no recognizable traces of physical contact). The defendant argues that Dr. Van Deven's testimony compared the physical findings of the complainant's examination to the physical findings in most of the cases of children alleged to have been sexually abused. As a result, the defendant claims that this testimony vouched for the complainant's credibility and was improperly admitted.

"The line between permissible and impermissible opinion testimony in child sexual abuse cases is not easily drawn." *Commonwealth* v. *Richardson*, 423 Mass. 180, 186 (1996). Expert witnesses may offer an opinion regarding the general symptoms or behavioral characteristics of sexually abused children. See *id.* However, "[w]here the witness explicitly links the opinion to the experience of the witness child, the opinion is clearly impermissible vouching." *Id.* The danger of vouching "is greater where the witness is testifying as both a direct witness and an expert, particularly where the witness offers fresh complaint testimony." *Id.*

Here, Dr. Van Deven did not provide fresh complaint testimony. Although she examined the complainant, she specifically stated that she did not interview the complainant about the sexual abuse allegation. Further, Dr. Van Deven did not explicitly connect the complainant to the general experience of sexually abused children. She described the findings from her examination of the complainant and testified as to the general findings associated with sexual abuse. Cf. *Commonwealth* v. *Allen*, 40 Mass. App. Ct. 458, 465 (1996) (affirming admission of substantially similar testimony from same physician). She never directly opined on whether the complainant in fact had been subjected to abuse. See *Commonwealth* v. *Federico*, 425 Mass. 844, 849-850 (1997).

Finally, the doctor's testimony did not comment on the complainant's truthfulness. Her testimony "did no more than give the jury information concerning the medical interpretation of an absence of any physical evidence of penetration; namely, such a finding does not exclude that sexual abuse occurred." *Commonwealth* v. *Colon*, 49 Mass. App. Ct. 289, 293 (2000).

Given a concern that a jury may associate sexual abuse with some evidence of physical injury, it is well within the province of a medical expert witness to explain that an absence of physical findings does not necessarily indicate an absence of abuse.[18] See *Commonwealth* v. *Federico, supra* at 851 n.13 ("The jury may be under the mistaken understanding that certain types of sexual abuse always or nearly always cause physical injury or scarring in the victim").

6. *The father's testimony.* The defendant challenges several aspects of fresh complaint testimony by the complainant's father. We agree with the defendant, and hold that such testimony should not be admitted at any retrial.

a. The complainant's father was asked to describe the reason the defendant's mother came to his house the day the videotape was recorded. The father answered that the defendant's mother had questioned her son's involvement in the assault and that the father had assured her: "You've known [the complainant] since she could talk. If you come over to the house, and you talk to her, she'll tell you the truth. . . . If you can leave the house and not believe her, I'll rethink what I'm thinking."[19]

The father's statements were not relevant to any issue at trial. Further, they constituted an improper endorsement of the complainant's credibility. His statements that "you've known [the complainant] since she could talk," "she'll tell you the truth," and "[i]f you can leave the house and not believe her" affirmed that the complainant was truthful. We permit fresh

---

[18]The judge also instructed the jury that "merely because an expert has expressed an opinion . . . doesn't mean that you have to accept it."

[19]Defense counsel objected to this statement after it was made and requested a bench conference. During the conference, the judge asked counsel why he did not object to the question. Counsel answered that he was "objecting at this point in time," and asked "that we move along, and the jury be instructed not to consider . . . the content of the . . . ." The judge then told counsel, "I think maybe you ought to object to questions before the answers come in," and instructed the attorneys to "move on."

Defense counsel could not reasonably have anticipated that the complainant's father would testify about his daughter's tendency to tell the truth when asked why the defendant's mother came to his house. Although the better practice would have been to move to strike the father's statement, counsel's objection and the discussion during the bench conference made it clear that he wanted the answer struck and the jury instructed to ignore the father's statement.

complaint witnesses to corroborate the testimony of the complainant, but we do not permit them, or any witness, to comment directly or indirectly on the credibility of the complainant or any other witness. See *Commonwealth* v. *Montanino*, 409 Mass. 500, 504 (1991), and cases cited. "Evaluations of credibility are, of course, within the exclusive province of the trier of fact." *Commonwealth* v. *Ianello*, 401 Mass. 197, 202 (1987), quoting *Commonwealth* v. *Bohannon*, 376 Mass. 90, 94 (1978). Cf. *Commonwealth* v. *Lorette*, 37 Mass. App. Ct. 736, 740 (1994), *S.C.*, 422 Mass. 1014 (1996) (mother's statement that daughter's testimony "wasn't fabricated," that "everything just fit," and that "[daughter] never once strayed" was improper affirmation of daughter's truthfulness). "It would be unrealistic to allow this type of . . . testimony and then expect the jurors to ignore it when evaluating the credibility of the complaining [witness]." *Commonwealth* v. *Montanino, supra*, quoting *Commonwealth* v. *Ianello, supra*.

The Commonwealth contends that the testimony merely answered the question why the videotape was made and that the father did not state that his daughter would tell the truth or that he believed she was credible. However, the statement regarding the complainant's truthfulness did not explain the reasons for making the videotape; it only described why the defendant's mother came to the house. The testimony was no more than an imprimatur of the credibility of the complainant. In a case such as this where the complainant's credibility is a key issue, such vouching may be especially prejudicial. On remand, such a statement may not be admitted.

b. The complainant's father also testified regarding a conversation with his daughter about the alleged misconduct. He stated that she "just clammed up. You could see in her eye — that she was — she had said something at that point that she didn't really want to talk about." These statements were improperly admitted.

A fresh complaint witness may testify both to the fact of the complaint and the details of the complaint as expressed by the complainant. See *Commonwealth* v. *Peters*, 429 Mass. 22, 27 (1999). By the "details," we mean that the witness may testify to the complainant's statements of the facts of the assault. See

*id.* at 30; *Commonwealth* v. *Licata,* 412 Mass. 654, 658-659 (1992). The witness, however, may not interpret the complainant's words. Allowing the witness to testify beyond what was said would be inconsistent with the reason for permitting fresh complaint evidence, namely, to corroborate the complainant's testimony at trial.[20] See *Commonwealth* v. *Morais,* 431 Mass. 380, 385 (2000).

The father's comments here exceeded the permissible scope of fresh complaint evidence. Instead of recounting what his daughter said, he provided his own interpretation of her words and emotions as opposed to a factual description. Such comments crossed the line from permissible corroboration to impermissible vouching.

c. Later in his testimony, the complainant's father recalled telling a coworker, who "could see that something was wrong," that, "I don't think I can work. I'm too upset." These statements should not have been admitted. The father's out-of-court statements to his coworker constituted inadmissible hearsay because the statements were offered for the truth of the fact that something indeed was wrong and that the father in fact was upset. The comment that the coworker could see that something was wrong was outside the father's knowledge; he could not know his coworker's thoughts. Finally, the father's emotional response or state of mind after his daughter's revelations lack relevance; they have no "rational tendency to prove an issue in the case." *Commonwealth* v. *Fayerweather,* 406 Mass. 78, 83 (1989), quoting *Commonwealth* v. *Chretien,* 383 Mass. 123, 136 (1981).

7. *Conclusion.* The defendant's motion to dismiss the youthful offender indictment for indecent assault and battery should have been allowed. In addition, the admission of the videotape

---

[20]The dissent states that a fresh complaint witness properly may testify to "the [complainant's] appearance and similar physical observations" at the time the complainant made the complaint, *post* at 879, and cites *Commonwealth* v. *Dockham,* 405 Mass. 618, 620, 627 (1989), and *Commonwealth* v. *Moreschi,* 38 Mass. App. Ct. 562, 565-567 (1995), as support for this proposition. In neither case, however, did the defendant raise, nor did the court directly address, the issue whether descriptions of the complainant's appearance while making the complaint would be admissible as part of a witness's fresh complaint testimony.

as fresh complaint constitutes reversible error. We therefore reverse the defendant's adjudication as a youthful offender and remand the matter for a new trial consistent with this opinion. On remand, because the offense does not involve the infliction or threat of serious bodily harm, the Commonwealth must proceed against the defendant by complaint rather than by indictment.

*So ordered.*

IRELAND, J. (dissenting, with whom Spina and Sosman, JJ., join). While I concur with the court's interpretation of the youthful offender statute, I write separately with regard to two evidentiary matters. In my opinion, neither the admission of the fresh complaint videotape nor the father's allegedly "vouching" testimony constituted an abuse of the trial judge's discretion.

1. *The "Fresh Complaint" Videotape.*

As the court explains, *ante* at 867, the prosecution sought to introduce a videotape for the limited purpose of corroborating the complainant's claims. Recorded by the complainant's parents, the videotape depicts the child answering questions posed by her father and the mother of the defendant. After considerable discussion regarding the proffered evidence, the jury viewed an edited version of the videotape over the defendant's objection.[1]

In *Commonwealth* v. *Lavalley*, 410 Mass. 641, 642-646 (1991), we recognized videotapes as an acceptable medium to convey a complainant's fresh complaint to the jury. In reaching that conclusion, we acknowledged that "videotapes are 'on balance, a reliable evidentiary resource.' Consequently, videotapes should be admissible as evidence if they are relevant [and] they provide a fair representation of that which they purport to depict . . . ." *Id.* at 645, quoting *Commonwealth* v. *Mahoney*, 400

---

[1]Although most of the nonpertinent dialogue was removed, certain *gratuitous comments such as*, "You're doing great. . . . I promise, honey, you're still my girl. Okay? I love you to pieces," remained on the videotape. Notwithstanding the parties' claim that further editing was "impossible . . . without digitizing and computerizing and having an awful lot of time to attempt to do that," these statements should not have been before the jury.

Mass. 524, 527 (1987). Almost eight years later, in *Commonwealth* v. *Peters*, 429 Mass. 22, 30 (1999), we held that, "[t]he complainant in a sexual assault case may testify *only* to the fact that a fresh complaint was made and to whom it was made. The complainant should not be allowed to testify about the details of the complaint." (Emphasis in original.) Given its understanding of this principle, the court views this videotape as inadmissible self-corroboration. Weighing heavily our holding in *Commonwealth* v. *Lavalley*, *supra* at 645, however, I respectfully disagree. See *Commonwealth* v. *Jerome*, 36 Mass. App. Ct. 59, 62-63 (1994) (audiotape of victim's fresh complaint).

In my view, *Commonwealth* v. *Peters*, *supra*, which prohibits the complainant from testifying about the contents of her complaint, does not control this case. Where a videotape such as this one is offered, it constitutes the fresh complaint *itself*. It is the equivalent of the testimony of a third party; it is not self-corroboration. See *Commonwealth* v. *Lavalley*, *supra*. Thus, through the videotape, the judge allowed the jury to see an accurate representation of the fresh complaint. He also eliminated the need for each of the other fresh complaint witnesses to testify regarding the contents of the complaint. In so doing, the judge spared the jurors both repetitive testimony and the possibility of erroneous or conflicting recollections. Thus, by showing the edited videotape, and prefacing it with a limiting instruction, the judge permitted the Commonwealth to introduce the contents of the fresh complaint in the most accurate and efficient way possible, mitigated any prejudicial impact on the defendant, and resolved a thorny matter consistent with our case law. *Commonwealth* v. *Mahoney*, *supra*.[2]

That being said, I do not encourage the use of videotape in

---

[2]Mindful of other difficulties that often arise in the context of fresh complaint testimony, I briefly note the following. First, this case does not present a "piling on" problem, see *Commonwealth* v. *Licata*, 412 Mass. 654, 659 (1992) (repetitive testimony from several witnesses regarding details of fresh complaint may lend undue credibility to complainant's testimony), because the fresh complaint witnesses did not rehash the contents of the videotape. Rather, their testimony focused mainly on the events prior to the videotaping and other wholly unrelated matters. In an attempt to mitigate any potential duplicative testimony, the judge cautioned "most strongly" that such statements are to be used for corroborative — as opposed to substantive —

lieu of fresh complaint witnesses. Rather, my dissent hinges largely on a viewing of the videotape and the nature of the trial. In particular, I note that private individuals — not law enforcement — recorded this videotape less than twenty-four hours after a child of tender years first divulged the alleged abuse; that, through editing, a vast majority of the irrelevant dialogue and side conversations between the parties was eliminated; that the information was conveyed through the complainant's "unrehearsed" answers to questions posed by the defendant's mother; that the videotape did not record any emotional responses, crying, or the like that might improperly influence the jury; and that all the parties were subject to cross-examination at trial. Given these factors I would not characterize the judge's admission of the videotape as an abuse of discretion. See *Commonwealth* v. *Lavalley, supra* at 645 & n.5 (upholding admission of videotape of victim recounting incident in "relatively composed manner" given content of tape and judge's limiting instructions).

2. *The Father's Testimony.*

In relating his discussions with the defendant's mother, the witness stated, "You've known [the complainant] since she could talk. If you come over to the house, and you talk to her, *she'll tell you the truth.* . . . If you can leave the house and not believe her, I'll rethink what I'm thinking." (Emphasis added.) The court holds that this response constituted an impermissible evaluation of the complainant's credibility. *Ante* at 873-874. In my opinion, the contested testimony did not constitute "vouching"; rather, it was an accurate report of the conversation leading up to the videotaped fresh complaint. Cf. *Commonwealth* v. *Lor-*

purposes only. See *Commonwealth* v. *Lamontagne,* 42 Mass. App. Ct. 213, 220 (1997) (five fresh complaint witnesses acceptable where "trial judge clearly, emphatically, and repeatedly instructs" jury not to use evidence substantively).

Next, the admission of the videotape as corroborative evidence did not infringe on the defendant's right to confront witnesses. See *Commonwealth* v. *Lavalley,* 410 Mass. 641, 645 n.5 (1991). In this case, all of the participants depicted in the videotape testified at trial, and thus the defendant had the opportunity to cross-examine them concerning the nature and context of the child's fresh complaint. See *Commonwealth* v. *Whelton,* 428 Mass. 24, 27 (1998). That the defendant chose not to inquire about the circumstances surrounding the videotape constituted a strategic decision on his part.

*ette*, 37 Mass. App. Ct. 736, 740 (1994), *S.C.*, 422 Mass. 1014 (1996) (mother's statement that daughter's testimony "wasn't fabricated" improperly affirmed that testimony was "entirely truthful"). Unlike an unbiased or expert witness, a father's tacit assessment of his daughter's credibility is unlikely to carry weight with the jury. The contents of the statement also indicate a willingness to reconsider the child's trustworthiness pending the outcome of the conversation. Because the father's comment did not refer to anything that happened in either the videotaped interview or the child's in-court testimony, there was, in my opinion, no improper endorsement of the witness's truthfulness.

Last, I disagree with the court's judgment regarding the father's testimony that, on being asked about the alleged misconduct, his daughter "just clammed up. You could see in her eye . . . . [and] she had said something at that point that she didn't really want to talk about it." Notwithstanding the defendant's objection, I believe the judge properly admitted this statement. Unlike other jurisdictions, where only the fact of the complaint is admitted, under Massachusetts practice the entire statement, including the attendant details, is admissible. P.J. Liacos, Massachusetts Evidence § 6.19.2, at 349 (7th ed. 1999). Although the witness may testify only to "those details to which the [complainant] has testified generally," *Commonwealth* v. *Licata*, 412 Mass. 654, 659 n.8 (1992), comments regarding the complainant's appearance and similar physical observations are admissible. See *Commonwealth* v. *Dockham*, 405 Mass. 618, 620, 627 (1989) (given limiting instruction, fresh complaint testimony properly admitted, including fact that victim's "eyes popped open" during disclosure of misconduct); *Commonwealth* v. *Moreschi*, 38 Mass. App. Ct. 562, 565-567 (1995) (upholding admission of fresh complaint testimony that victim appeared "ashamed" and hesitant while talking about sexual affronts). On that front, I also respectfully dissent.