NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-150

COMMONWEALTH

vs.

EDWARD LACEY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury-waived trial in the Superior Court, the defendant, Edward Lacey, was convicted of two counts of rape, three counts of indecent assault and battery, strangulation, kidnapping, assault and battery, and threat to commit a crime.[1] On appeal, he contends that the Commonwealth improperly refreshed the victim's memory during a break in her cross-examination, the prosecutor's misstatement of evidence in closing argument created a substantial risk of a miscarriage of

---

[1] Although the defendant was charged with, inter alia, armed kidnapping aggravated by inflicting serious bodily injury, two counts of aggravated rape, and assault and battery by means of a dangerous weapon, the judge found him guilty of the lesser included offenses of kidnapping, rape, and assault and battery. In addition, the judge found the defendant not guilty of assault with intent to murder.

justice, and the admission of prior bad act evidence constituted prejudicial error.  We affirm.

Background.  The victim met the defendant in May of 2018, at a homeless shelter in Worcester.  On the afternoon of May 11, 2018, she and the defendant smoked "crack" cocaine near the shelter and later went to the Worcester City Motel to purchase more drugs.  After smoking more crack cocaine at the hotel, and running out of money to purchase yet more, the victim "laid down and tried to go to sleep."  She woke up to the defendant "trying to paw" at her.  She asked him to stop, but he responded, "You don't know I'm a little -- I'm a [l]evel [three] sex offender?"  The defendant pinned her down on the bed, struck her multiple times on her face, choked her with his fists, and strangled her.  The victim tried to fight back and scratched the defendant's face.  The defendant subsequently lifted an old radiator from the room and struck the victim in the head with it.  During the struggle he said to her, "People that get hurt, hurt people," and threatened to kill her and hurt her daughter if she tried to scream or retaliate in any way.  The defendant further told her that "he had just gotten out of jail from doing the same thing to another female," and that he "had stabbed [his previous victim] because she -- 'cause she screamed and tried to get away."  The defendant then vaginally and anally raped the victim multiple times, and touched her breasts, vagina, and anus.  She

2

begged him to stop, but to no avail.  The rapes and assaults continued for hours.  At some point the defendant forced her to urinate on his face.

The following morning, the defendant posted on Facebook the following:  "I want everybody on facebook to know that evil was hard to fight inside of me when someone violates u I wind up hurting other people . . . sorry that I hurt u as well but it is time to end this life."  He later posted another message to Facebook that read:  "I need u to send police to Worcester city motel I hurt a young woman [I'm] about [to] kill myself."  A family friend of the defendant read the Facebook post and contacted the defendant.  The defendant told her, "I hurt someone.  Get the police here."  During this conversation with the defendant, the family friend could hear "whimpering" in the background.  At some point the defendant contacted 911 and spoke with Detective Paul Brown of the Shrewsbury Police Department.  During the call, the defendant admitted to physically and sexually assaulting the victim.  Also, Detective Brown "could hear a female crying in the background" during the call.[2]  Shrewsbury police officers were dispatched to the Worcester City Motel and observed the victim run toward them.  She struggled to walk and was "panting, struggling to breathe, and appeared to be

_____

[2] A copy of the 911 audio was entered in evidence as an exhibit.

3

in either shock or just sheer trauma."  She "had blood covering her face . . . Her right eye was swollen shut.  Her right cheek was completely swollen.  Her lips were cut."  The victim was transported to the hospital.  Her medical records, admitted in evidence at trial, reflected, inter alia, that her "[f]ace [was] swollen and [there was] deformed dried blood on [her] face."

The defense at trial centered on consent and challenges to the victim's credibility.  The defendant testified at trial and claimed that he and the victim had consensual intercourse.

Discussion.  1.  Witness communication during recess. During cross-examination of the victim, the judge ordered a brief recess.[3]  Following that recess, defense counsel asked the victim if she had reviewed text messages prior to testifying.[4] The victim responded that she "just reviewed some of them . . . during the break."  She further testified that they were shown to her by the prosecutor.[5]  The defendant objected to the victim reviewing those materials "mid-cross examination," and now

---

[3] The victim asked if she could "have a minute," and, in response, the judge ordered a fifteen-minute recess.

[4] Copies of the text messages between the defendant and the victim were admitted in evidence as exhibits prior to the victim's testimony.

[5] The prosecutor represented to the judge that the victim asked to review the text messages during the break and "police officers" outside the court room "let her read those text messages."  It is unclear whether the prosecutor shared the messages or whether the victim initiated the request with the police officers.  In any event, these distinctions are immaterial in the present context.

4

claims on appeal that refreshing the victim's recollection during the recess violated his right to a fair and impartial trial.  The argument is unavailing.

It is well settled that "the scope of cross-examination, including to what extent the accuracy, veracity, and credibility of a witness may be tested, rests largely in the sound discretion of the judge, not subject to revision unless prejudice is shown to a party by reason of too narrow restriction or too great breadth of inquiry."  Commonwealth v. Smith, 329 Mass. 477, 479 (1952).  "The burden of showing an abuse of discretion and resulting prejudice is on the defendant, and our determination must be made by considering the cross-examination in its entirety."  Commonwealth v. Repoza, 382 Mass. 119, 125 (1980).  Here, in response to the defendant's objection, the judge stated that there was not enough information before him to conclude that the witness's review of the text messages during a recess, standing alone, was "wrong" as a matter of law.  The judge then stated to defense counsel, "[i]f you think there's truly something that was improper that prejudices your client's right to a fair trial, then why don't you spell it out for me, including if you want to take break to do that."  Defense counsel responded, "I don't think I need to take a break.  I just wanted to preserve my objection in the case -- to make me cover myself."  The judge subsequently

5

advised defense counsel, "if your argument is, now, that she changes -- she changed her testimony in some way, then you should substantiate that and, then, tell me what it is you want to do, if I so find."  It was incumbent on the defendant to create a record and demonstrate that the witness or the Commonwealth had acted inappropriately, and that prejudice resulted therefrom.  See Repoza, supra at 125.  This he did not do.  Indeed, rather than accept the opportunity provided by the judge, defense counsel abandoned the issue.  He did not request a voir dire, pursue further questioning to establish facts to allow the judge to ascertain whether the witness had been improperly coached or influenced, or seek any remedy of any kind.  Furthermore, the judge did not restrict defense counsel's cross-examination of the witness in any way.  To the contrary, the judge advised defense counsel that he could attempt to "substantiate" the basis for his objection, but he declined to do so.  We further note that the text messages were in evidence as agreed-upon exhibits, and that the present case was a jury-waived trial before an experienced judge.  See generally Commonwealth v. Seesangrit, 99 Mass. App. Ct. 83, 91-92 (2021).  In short, on the record before us we discern no abuse of

6

discretion, and further "there is no sign of prejudice."

Repoza, supra at 125.[6]

　　2. Closing argument. The defendant next argues that the prosecutor erred by stating in closing, "[i]n the immediate aftermath of that horrible night, the defendant and the complaining witness said the same thing, 'beaten,' 'physically assaulted,' 'raped,' 'sexually assaulted.'" Where, as here, the defendant did not object at trial, our review is limited to whether there was any error, and if so, whether that error created a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999). Even assuming, arguendo, that the prosecutor's inclusion of "rape" in the statement was error, it did not create a substantial risk of a miscarriage of justice. We reach this conclusion in view of the

---

[6] The defendant's reliance on Commonwealth v. Quincy Q., 434 Mass. 859 (2001), is misplaced. There, the Supreme Judicial Court held that it was error to allow a prosecutor to refresh a child witness's recollection during a recess midway through the child's direct examination. Id. at 871. The court reasoned that such a procedure could not be condoned in the context of a child sexual abuse case, where the child could not read, had difficulty answering the prosecutor's questions, and the circumstances at hand revealed too much of a risk that the prosecutor "inadvertently or not, suggested to the child the desired substance of her testimony during the break." Id. In those circumstances, which are not present here, the proper practice would have been to refresh the child's recollection before the jury using a procedure "similar to that utilized with any witness who cannot read or cannot read English." Id. at 871 & n.17.

strength of the Commonwealth's case, the overwhelming evidence at trial, the defendant's Facebook postings, and the defendant's admission to Detective Brown in the immediate aftermath of the incident that he physically and sexually assaulted the victim. We again note that the present trial was jury-waived, and "[a] trial judge sitting without a jury is presumed, absent contrary indication, to have correctly instructed himself as to the manner in which evidence is to be considered in his role as factfinder." Commonwealth v. Batista, 53 Mass. App. Ct. 642, 648 (2002). Here, there is no indication that the judge ignored the well-established rule that closing arguments of counsel are not evidence.

3. Prior bad acts. Finally, the defendant contends that the judge abused his discretion in allowing the victim to testify that the defendant told her, inter alia, that "he had just gotten out of jail from doing the same thing to another female . . . that he did it to another female, but he had stabbed her because she - 'cause she screamed and tried to get away." We disagree with the argument that the statement was more prejudicial than probative and constituted prejudicial error. A judge has discretion in determining "the relevance, probative value, and prejudice of such evidence," and the "decision to admit such evidence will be upheld absent clear error." Commonwealth v. Robidoux, 450 Mass. 144, 158 (2007).

8

Evidence of a defendant's prior bad acts "is inadmissible for the purpose of demonstrating the defendant's bad character or propensity to commit the crimes charged." Commonwealth v. Crayton, 470 Mass. 228, 249 (2014). "However, such evidence may be admissible for some other purpose, for instance, to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or pattern of operation. . . . Even if the evidence is relevant to one of these other purposes, the evidence will not be admitted if its probative value is outweighed by the risk of unfair prejudice to the defendant" (quotations and citations omitted). Id.

Here, the contested statement was admissible as evidence of the defendant's state of mind, as it reflected his intent toward the victim. See Crayton, 470 Mass. at 249. Moreover, the statement was relevant to rebut the defendant's claim of consent, and thus went to a central issue in the case, making it more probative than prejudicial. See Mass. G. Evid. § 403 note (2023) ("In balancing probative value against the risk of unfair prejudice, the fact that the evidence goes to a central issue in the case weighs in favor of admission"). In addition, the evidence was relevant to establishing the use of threats or

9

intimidation, an element of the charge of aggravated rape.[7] Finally, in the context of a jury-waived trial there was less risk that the judge, as fact finder, would have been improperly swayed by any alleged prejudicial impact of the evidence. See Batista, 53 Mass. App. Ct. at 648. For all these reasons, we have little difficulty concluding that the judge did not abuse his discretion in admitting this evidence.

Judgments affirmed.

By the Court (Green, C.J., Neyman & Englander, JJ.[8]),

Paul Little

Assistant Clerk

Entered: January 31, 2024.

---

[7] Although the defendant was convicted only on the lesser-included offense of rape, the question of aggravation was still a live issue at trial.

[8] The panelists are listed in order of seniority.