Benji A. STOUT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 1998–CA–002456–MR.

Court of Appeals of Kentucky.

Aug. 11, 2000.

Discretionary Review Denied June 7, 2001.

Suzanne A. Hopf, Frankfort, KY, for Appellant.

A.B. Chandler, III, Attorney General, Vickie L. Wise, Asst. Attorney General, Frankfort, KY, for Appellee.

Before: COMBS, JOHNSON and McANULTY, Judges.

## OPINION

JOHNSON, Judge:

Benji A. Stout appeals from the judgment and sentence imposed by the Fayette Circuit Court on September 21, 1998, following his conditional plea of guilty to two counts of receiving stolen property over $300 [1], both Class D felonies, and to three misdemeanor charges, including receiving stolen property under $300,[2] possession of a handgun by a minor,[3] and resisting arrest.[4] Pursuant to his plea agreement, Stout has appealed his transfer to circuit court and argues that the waiver was invalid for the following reasons: (1) that the waiver statute is constitutionally infirm; (2) that he could not be waived to circuit court on anything less than a clear and convincing standard of proof; (3) that the district court abused its discretion in finding that transfer to circuit court was appropriate; and (4) that the district court's refusal to consider a psychological evaluation constituted reversible error. Since we find no merit to these arguments, we affirm.

The charges against Stout stem from events which occurred in May 1997, when Stout was 17 years old. Police officers had located and placed under surveillance a 1994 Jeep Cherokee that had been reported stolen. On May 27, 1997, Stout was observed by officers getting out of another stolen vehicle, a 1995 Chevrolet Blazer,

1. Kentucky Revised Statutes (KRS) 514.110.

2. This was a felony charge that was amended to a misdemeanor offense.

3. KRS 527.100.

4. KRS 520.090.

and into the Jeep. Stout attempted to start the vehicle, but was unsuccessful as the officers had disabled the car by removing its fuel pump. Before officers could reach the vehicle, Stout locked himself in the Jeep. When Stout was finally removed from the car, he attempted to bite the officers and kicked and spit at them. After he was handcuffed, the officers found a loaded .38 caliber revolver in Stout's pants' pocket.[5]

On June 16, 1997, a transfer hearing was held in the Juvenile Division of the Fayette District Court to determine whether Stout should be treated as a youthful offender. At the conclusion of the hearing, the district court stated its findings in support of transferring Stout to circuit court as a youthful offender:

> I do believe that it is appropriate now that the case be transferred and that [Stout] be tried as a youthful offender. I believe that the offenses that have been committed are serious enough to warrant that. I acknowledge that the two offenses were against property as opposed to against persons, but I believe that Mr. Stout is mature enough to understand the consequences of his actions. His prior record clearly indicates that he has had a prior felony offense, two felony offenses here today. I think the likelihood that he, if he were released to the community that he would continue to commit serious offenses is very great at this point. Based on his total disregard of the terms and conditions that have been previously set for him under probation is [inaudible]. Whether he has done time or not, I believe that the Commonwealth has established probable cause that the offense was committed and the child committed

this offense and falls under KRS 635.020. The child is over 16 and I'm ordering that the charges be transferred to the Fayette Circuit Court and that he be tried as a youthful offender. The Commonwealth has met the burden of proof.

After Stout was arraigned in Fayette Circuit Court, he filed a motion to dismiss the indictment and to remand the case to juvenile court. Stout argued that the transfer was invalid as the district court had not articulated the standard of proof it had employed in making its decision to transfer, and that regardless of the standard the requirements for transfer had not been met. In its September 30, 1997 order, the Fayette Circuit Court rejected Stout's argument that the district court was required to utilize any particular standard of proof. However, it did determine that the district court's findings were not sufficiently delineated in order "to permit a meaningful review," and remanded the matter to district court for "more complete and specific findings" with respect to the factors contained in KRS 640.010(2)(b) 4, 5, 6, and 7, and to make a statement as to each "even if that consists of one sentence ..." Finally, the circuit court held that the evidence on the issue of Stout's prior felony adjudications was insufficient and ordered that additional evidence be heard to establish the existence of those adjudications.

At the second transfer hearing, conducted on November 19, 1997, the clerk of the court testified that on November 11, 1996, Stout pled guilty to receiving stolen property over $300, a felony, and on February, 7, 1997, two months prior to the current charges, he pled guilty to a charge of burglary in the first degree, also a felony

---

5. The discovery of Stout's fingerprints in another stolen vehicle recovered by police earlier in May 1997, linked Stout to yet another vehicle related crime of receiving stolen property.

offense. The Commonwealth called a juvenile service specialist to testify concerning the programs the juvenile system would be able to offer Stout, particularly since Stout at that time was just a month shy of being 18 years old. This witness also testified that although Stout had had frequent contact with juvenile court, he had not been offered any rehabilitative services as a result of that prior contact. Stout attempted to introduce a psychological report that was prepared by a licensed clinical social worker after the original hearing, but the district court refused to allow the report to be admitted. The district court stated that the purpose of the hearing on remand "was very specific," and that it was "not going to hear any new evidence that was not presented before"—that it was not going to allow Stout "a second bite of the apple."

In support of its renewed decision to transfer Stout to circuit court to be prosecuted as a youthful offender, the district court noted that in addition to the two prior felony adjudications, Stout had "an extensive court record with a variety of other charges that have been brought before the court." It further articulated the following findings:

> I think that when we are dealing with a child who has had extensive exposure to the court system and who is very, very close to his 18th birthday as Mr. Stout is, that we're continuing to weigh the balance between you know, what we can do to try to rehabilitate this child and what we can, what we need to do and must do to protect the community. And I find it very offensive that while these other charges, very serious charges are pending that Mr. Stout goes

out and is involved in another offense which he has admitted to.[6] To me that is an indication of a, his lack of interest in trying to be involved in or participate in his own rehabilitation, if that were an option. And I think that we are to the point where the value [sic] and protecting the community is greater than, it's risen to the level that we need to protect the community. Mr. Stout doesn't seem to care too much about himself[.] Circuit Court can make a determination on what's appropriate for him[,] but I think it's in the best interest of the community certainly that he have consequences as an adult. It may be in his best interest to get his attention at this point in life so that we hope that he will not continue to re-offend as an adult. I think that even if he is in the adult system, if he is convicted of these charges at the Circuit Court level, there are still many, many opportunities for rehabilitation that are available to adults through the adult system. That those resources would be available to him, I don't know why he in particular has not moved through the system quicker, I mean I can't explain that. There may be a variety of reasons as to why he may not have been able to be helped. But it hasn't occurred. Maybe he didn't do, maybe if he just didn't get in as much trouble as he could have, up to this point and we're down to the last couple of months of his minority and I'm not going to let that be a factor. I think that it's appropriate that it goes on up. I think on the prior order the clarification indicated as to subsection 4 of the statute and the child's prior record, there are two prior felonies that have been testified to. I do believe that the offenses that he was charged with

**6.** While Stout was out on bond set by the circuit court for the charges involved in the case *sub judice,* he was charged with burglary in the second degree. He stipulated his guilt to an amended charge of receiving stolen property under $300 in juvenile court, the disposition of which was pending at the time of the second transfer hearing.

today, I consider them to be serious offenses. One of which involved possession of a handgun and as to subsection 5, I think I've addressed that issue that I believe that it's in the best interest of Benji and the community that this case be transferred to Circuit Court. The prospects of adequate protection of the statute, what concerns me quite honestly is that while this was pending Benji re-offended so the public was not protected even though the process was in place and I think he was out on bond on the other offense still re-offending, so we as a system are not able to protect the public. The likelihood is greater that we can protect the public if this case is transferred to Circuit Court. And I think that the likelihood of him [sic] being able to use the rehabilitation services that are available through the juvenile court system are just pretty slim at this point in view of his age. It may be too little, too late from the stand-point of using those resources, but I'm just not willing to back down on what my original opinion was in this case. I think that I have clarified those points and I will issue a new amended transfer hearing order which will be sent to the Circuit Court and let the case proceed accordingly.

After the second order was entered transferring jurisdiction to circuit court, Stout again sought to have his case remanded to the district court and argued that he did not meet the criteria for trans-

fer. Stout attached to his motion a copy of the psychological evaluation which the lower court had refused to consider. At the hearing on the motion to dismiss in June 1998, the circuit court remarked that the district court judge had taken "great pains to explain why she did what she did," and concluded that the order was neither arbitrary nor an abuse of discretion.

On August 25, 1998, Stout pled guilty to the various pending charges, as well as to other offenses committed in June 1998, after his 18th birthday which are not the subject of this appeal.[7] He was sentenced to serve one year on each of the two felony convictions of receiving stolen property over $300, with the sentences to run consecutively with each other, and 12 months each on the handgun conviction and a misdemeanor conviction of receiving stolen property, and 90 days for the resisting arrest conviction. The latter sentences were run concurrently with the sentences imposed for the two felony convictions. Finally, Stout was ordered to be placed in the custody of the Juvenile Justice Department to be placed in a treatment program until his 19th birthday.[8] This appeal followed.

█ It is axiomatic that a juvenile offender has no constitutional right to be tried in juvenile court.[9] In our Unified Juvenile Code,[10] our Legislature has created a scheme in which most juvenile offenders are proceeded against in the juvenile

---

7. These offenses included criminal possession of a forged instrument, wanton endangerment in the second degree, and possession of marijuana.

8. The record does not reveal what sentence Stout received upon the re-sentencing required to be conducted upon his 19th birthday.

9. See *Woodard v. Wainwright*, 556 F.2d 781, 785 (5th Cir.1977), *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1285, 55 L.Ed.2d 794 (1978) ("[T]reatment as a juvenile is not an inherent right but one granted by the state legislature, therefore the legislature may restrict or qualify that right as it sees fit, as long as no arbitrary or discriminatory classification is involved.")

10. KRS Chapters 600 through 645.

division of district court.[11] However, our Legislature has recognized that not all juvenile offenders should be proceeded against in juvenile court and, accordingly, the scheme it enacted provides for both automatic[12] and discretionary[13] transfer of certain juvenile offenders to circuit court. In the case *sub judice,* since Stout was charged with two Class D felonies, was at least 16 years old, and because he had previously "been adjudicated a public offender for a felony offense,"[14] it was within the discretion of the district court to transfer him to circuit court.

KRS 640.010(2)(b) sets out the criteria the district court must consider in determining whether to transfer a juvenile as a youthful offender. At a minimum, the district court must consider:

1. The seriousness of the alleged offense;

2. Whether the offense was against persons or property, with greater weight being given to offenses against persons;

3. The maturity of the child as determined by his environment;

4. The child's prior record;

5. The best interest of the child and community;

6. The prospects of adequate protection of the public;

7. The likelihood of reasonable rehabilitation of the child by the use of proce-

dures, services, and facilities currently available to the juvenile justice system; and

8. Evidence of a child's participation in a gang.[15]

At the time of Stout's original hearing, subsection (2)(c) of this statute provided that if the court was "of the opinion, after considering the factors enumerated in subsection (b)" that the child should be transferred, it "shall issue an order transferring the child as a youthful offender."[16]

As Stout points out, the statute does not set forth the standard of proof that governs the district court's determination on the issue of transfer, or the weight to be given the various factors. Stout's initial argument in this appeal is that KRS 640.010(2)(b), violates Sections 2 and 11 of the Kentucky Constitution because it does not provide for a "clear and convincing" standard of proof. Stout contends that

[b]ecause the transfer hearing affects the minor's liberty interest, and because the hearing is a matter of critical importance which affects the rights of the minor, the court must be held to a higher standard of review in order to assure that fundamental fairness is guaranteed and that any arbitrary and capricious application of the law is avoided.

---

**11.** KRS 635.020(1).

**12.** KRS 635.020(4) provides for automatic waiver of district court jurisdiction of a child who is at least 14 years old who is "charged with a felony in which a firearm was used in the commission of the offense."

**13.** KRS 635.020(3) and (4) provide that a minor charged with a felony offense may be transferred to circuit court and prosecuted as youthful offenders, depending on the class of felony with which he is charged, his age, and/or his previous contacts with the juvenile justice system.

**14.** KRS 635.020(3).

**15.** The factor contained in KRS 640.010(2)(b)8., concerning gang participation, was added to the list effective July 15, 1998, and thus was not considered in the case *sub judice.*

**16.** The statute was amended effective July 15, 1998, to provide for discretionary transfer if the district court finds "two (2) or more of the factors ... are determined to favor transfer."

Any lesser standard, he argues, subjects the transfer hearing "to an unreliable fact-finding process." The Commonwealth insists that such a high standard of proof is not necessary because there "already exists sufficient procedural and constitutional safeguards to protect a juvenile defendant's constitutional rights."

Both Stout and the Commonwealth rely on *Kent v. United States*,[17] the seminal case concerning the transfer of jurisdiction in juvenile cases. Stout relies upon the United States Supreme Court's characterization in *Kent* of a transfer hearing as a "critically important" stage of the juvenile court process.[18] Clearly, the Supreme Court's holding in *Kent* requires a state's statutory scheme for transfer of a juvenile to adult court to provide a degree of procedural regularity that comports with "the essentials of due process and fair treatment."[19] The Commonwealth contends that this state's statutory scheme for transfer of jurisdiction complies in every respect with the procedural due process requirements mandated by *Kent*.

■ Certainly, *Kent* does not require a statutory scheme to provide for any particular standard of proof. Indeed, in *Breed v. Jones*,[20] the United States Supreme Court specifically discussed its holding in

*Kent*, and remarked that it had "never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court."[21] Thus, the fact that a transfer hearing is "critically important," does not necessarily require a particular evidentiary standard, much less the standard of clear and convincing proof, in order to comport with traditional notions of due process.

■ "Under Kentucky law no less than under federal law, the concept of procedural due process is flexible."[22] In determining which standard of proof is appropriate in any particular context, our Courts, and the United States Supreme Court, have utilized the due process analysis set forth in *Mathews v. Eldridge*.[23] *Mathews* articulates three factors whose consideration is required by "the specific dictates of due process": (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or

---

**17.** 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

**18.** *Id.*, 383 U.S. at 556, 86 S.Ct. at 1054–55, 16 L.Ed.2d at 94.

**19.** *Id.*, 383 U.S. at 562, 86 S.Ct. at 1058, 16 L.Ed.2d at 98.

**20.** 421 U.S. 519, 537, 95 S.Ct. 1779, 1790, 44 L.Ed.2d 346, 360 (1975).

**21.** *Breed*, which concerned a double jeopardy challenge by a juvenile adjudicated to be guilty in juvenile court and then transferred to adult court, held:

> We require only that, whatever the relevant criteria, and whatever the evidence de-

manded, a State determine whether it wants to treat a juvenile within the juvenile court system before entering upon a proceeding that may result in an adjudication that he has violated a criminal law and in a substantial deprivation of liberty, rather than subject him to the expense, delay, strain, and embarrassment of two such proceedings.

**22.** *Smith v. O'Dea*, Ky.App., 939 S.W.2d 353, 357 (1997).

**23.** 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See Commonwealth v. Raines*, Ky., 847 S.W.2d 724 (1993) and *Shaw v. Seward*, Ky.App., 689 S.W.2d 37, 39 (1985).

substitute procedural requirement would entail." [24]

Under this analysis, the private and governmental interests are easy to discern. A juvenile offender subject to waiver, such as Stout, clearly has a substantial interest in maintaining his status as a juvenile, in part because of the privacy afforded an adjudication in the juvenile court, but more importantly, because of its potential for a lesser punishment. As recognized by our Supreme Court, a wavier order "can make the difference between a brief period of regenerative treatment and life imprisonment or even death." [25] On the other hand, the Commonwealth wants to ensure that a juvenile offender receives the appropriate rehabilitation treatment. This is reflected in the Legislature's stated intent that "[a]ny child brought before the court under KRS Chapters 600 to 645 shall have the right to treatment reasonably calculated to bring about an improvement in his condition." [26] Additionally, the state has a compelling interest in protecting the public from a juvenile who will not be helped by the juvenile justice system, as demonstrated, for example, by his previous exposure to juvenile court.

Finally in regard to the *Mathews* test, we believe the risk of erroneous deprivation is minimal due to the well honed statutory framework guiding the district court in making a waiver determination. The specific factors set forth in KRS 640.010(2)(b) direct the court's focus on individual juveniles to "ensure individualized consideration of the maturity and moral responsibility of 16– and 17–year–old offenders before they are even held to stand trial as adults." [27] Thus, we are unconvinced that the transfer scheme is unconstitutional because it does not provide for a standard of proof. Obviously, the decision must be supported by substantial evidence to pass judicial review; however, no greater standard need be applied. Indeed, the transfer scheme evinces the Legislature's intent that the district court judge have considerable discretion in balancing the needs of the juvenile with those of society. [28] The imposition of a clear and convincing standard of proof would significantly reduce the discretion of the district court and therefore conflict with that intent.

We hold that the statutory scheme established for the discretionary transfer of juvenile offenders to circuit court is not constitutionally infirm or violative of a juvenile's due process rights because it neglects to provide a standard of proof, much less the standard of clear and convincing proof. Stout's reliance on *Santosky v. Kramer*,[29] a case concerning the termination of parental rights, and *Addington v. Texas*,[30] which concerned the standard of proof required to satisfy due process in a civil commitment proceeding, is misplaced. The private interests at stake in those

24. *Mathews v. Eldridge, supra*, 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33.

25. *Buchanan v. Commonwealth*, Ky., 652 S.W.2d 87, 88 (1983).

26. KRS 600.010(d).

27. *See Stanford v. Kentucky*, 492 U.S. 361, 375, 109 S.Ct. 2969, 2978, 106 L.Ed.2d 306, 322 (1989)(imposition of capital punishment on juveniles convicted of murder held not to constitute cruel and unusual punishment).

28. *See Pevlor v. Commonwealth*, Ky., 638 S.W.2d 272 (1982), *cert. denied* 459 U.S. 1149, 103 S.Ct. 794, 74 L.Ed.2d 998 (1983).

29. 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

30. 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

cases are not sufficiently analogous to those involved in a juvenile transfer hearing. Stout overlooks the fact that a transfer hearing does not resolve the issue of his guilt or innocence, or set his punishment, if any, but merely determines the jurisdiction to resolve the charges against him.[31] Even if we agreed with Stout's assertion that his interest in remaining in juvenile court is "a most precious personal interest," that interest pales in comparison to the loss of a parent's fundamental liberty interest in the care and custody of his child, or the loss of liberty and other "adverse social consequences" suffered by a person confined to a mental hospital for an indefinite period of time.[32] In short, Stout was afforded the "essentials" of due process as required by *Kent.*

Next, Stout contends that at a bare minimum the district court's transfer order was not supported by substantial evidence. In particular, he challenges the finding by the district court that the transfer was in his best interest. Having reviewed the record, which includes a transcript of both hearings, and the district court's findings, set out verbatim earlier in this opinion, we conclude that there is substantial evidence to support the district court's transfer decision.

While the evidence establishes that Stout's two felony charges were Class D felonies, which is the least serious degree of crime to qualify for waiver; and that the two charges of receiving stolen property involved motor vehicles, obviously crimes against property and not people, he was also charged with two misdemeanors; and

the record reflects that despite Stout's considerable exposure to juvenile court, his criminal misconduct was escalating. Furthermore, while these charges were pending, Stout was involved in yet another burglary.

Stout takes great exception to the district court's finding with respect to his best interest. He argues that "[t]here is absolutely no case which could be found that supports the notion that the best interest of a child is promoted through 'getting their attention' by moving the child improperly into the adult system of justice." The district court was of the opinion, given the number of times Stout had appeared in juvenile court, that nothing short of waiver to circuit court would convince Stout that his criminal conduct could have serious consequences both for himself and his victims. The district court noted that although Stout's crimes had so far been directed towards property, Stout carried a loaded handgun in his pocket and had the capability of causing serious harm to people. The record clearly supports the district court's concern for Stout and the public.

■ Finally, Stout alleges that the district court's refusal to consider the evaluation prepared by Joy Kokernot, after the case was remanded by the circuit court constitutes reversible error. While Stout argues that "a psychological report concerning a child's development is one of the most relevant pieces of evidence that the court could possibly consider," he made no attempt to obtain such evidence to offer at the original transfer hearing. Instead,

---

**31.** *See Buchanan, supra,* at 88, where the Court observed that "an order waiving jurisdiction does not restrain a juvenile of his liberty, or place him in the custody of any institution, or fine or punish him in any manner. The wavier order addresses only the question of jurisdiction to deal with the

charge against the juvenile.... It is the charge against the juvenile that restrains his liberty and not the order establishing that circuit court shall deal with him."

**32.** *Addington, supra* 441 U.S. at 426, 99 S.Ct. at 1809–10, 60 L.Ed.2d at 331.

Stout did not obtain the evaluation until after the circuit court remanded the matter for additional findings. The circuit court did not order the district court to conduct a new hearing on all issues, but rather directed that the district court clarify its findings, and hear evidence on the sole issue of Stout's prior felony adjudications in juvenile court. While it was within the district court's discretion to have allowed the introduction of other evidence, we know of no authority that required it to consider new evidence that could have been presented earlier.

Further, we have examined the psychological evaluation and conclude that even if error did occur in this regard, it was harmless. Despite Stout's allegation that the evaluation contained relevant evidence, we found no evidence in the report that was not provided at the original hearing. Indeed, the evaluation essentially repeats the theory articulated by Stout's mother at the original transfer hearing, that is, that Stout's criminal conduct is the result of his family's move to Lexington from Paris, Kentucky in 1995, and his desire to fit in with his new peers. There was nothing new[33] or insightful in the evaluation that would have affected the outcome of the hearing had it been admitted.[34]

Accordingly, the judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.

---

33. For example, the evaluation states that Stout completed a Multiphasic Personality Inventory–2 but it does not state the results of the test.

34. *See McQueen v. Commonwealth*, Ky., 393 S.W.2d 787, 790 (1965) (failure to admit cumulative evidence constituted harmless error).