Marico **PERKINS**, Appellant

v.

**COMMONWEALTH of Kentucky, Appellee**

**NO. 2014–CA–000412–MR**

Court of Appeals of Kentucky.

MAY 6, 2016; 10:00 A.M.

Discretionary Review Denied by Supreme Court March 15, 2017

Briefs for Appellant: Renee Vandenwall-bake, Assistant Public Advocate, Frankfort, Kentucky

Brief for Appellee: Jack Conway, Attorney General of Kentucky, J. Hays Lawson, Assistant Attorney General, Frankfort, Kentucky

BEFORE: DIXON, JONES AND NICKELL, JUDGES.

*OPINION*

NICKELL, JUDGE:

After entering a conditional guilty plea to an amended charge of second-degree robbery,[1] and a charge of possession of a

---

1. Kentucky Revised Statutes (KRS) 515.030, a Class C felony.

handgun by a minor, first offense,[2] Marico Perkins is serving a total sentence of eight years. He challenges the Fayette Circuit Court judgment alleging it resulted from an improper juvenile transfer hearing under an unconstitutional statute. He specifically claims he was wrongly denied funds to hire an expert to defend against transfer of his juvenile case to circuit court; the transfer statute is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); the "automatic" transfer statute of KRS 635.020(4)[3] violates substantive due process and equal protection; and, the trial court made insufficient findings of fact to support transfer. Some of these issues have already been definitively resolved by the Supreme Court of Kentucky and we are bound by those rulings. *Smith v. Vilvarajah*, 57 S.W.3d 839, 841 (Ky.App.2000). Having reviewed the briefs, the law and the record, we affirm.

## FACTS

The facts of the crime are of little consequence to the issues raised on appeal. For context, we provide a brief recitation. In a Lexington park/playground about 11:45 p.m. on July 28, 2012, while on Phase II probation[4] and just sixteen years of age, Perkins held a firearm to a man's back and demanded his "stuff" or he would shoot. After turning and seeing the gun, the vic-

tim complied, handing over his cell phone and $45 in cash. A short time later, a 9mm handgun and the victim's cell phone were recovered together in a nearby home—a home the victim's girlfriend had seen Perkins enter with other black males. During a consensual search of the residence, Perkins told Lexington Police Officer Ryan Holland the firearm was his, saying he had bought it on the street for protection. During a show-up, the victim positively identified Perkins as the person who held the gun to his back and took his phone and cash. Shortly after midnight on July 29, 2012, Perkins was arrested and charged with robbery in the first degree[5] and possession of a handgun by a minor.

## DISTRICT COURT PROCEDURAL HISTORY

At a hearing later that day, probable cause was found in Fayette District Court and Perkins was placed in detention. Thereafter, a series of events began that culminated in transfer of the juvenile charges from district court to circuit court where Perkins was to be tried as an adult. Propriety of the transfer is the heart of this appeal.

In early August 2012, the Commonwealth formally announced its intention to proceed against Perkins as a youthful offender under both KRS 635.020(2)[6] and (4),[7] and in September, moved to proceed

---

2. KRS 527.100, a Class A misdemeanor.

3. *Caldwell v. Commonwealth*, 133 S.W.3d 445, 452–53 (Ky.2004), warns, "[i]t is misleading ... to characterize KRS 635.020(4) as an 'automatic transfer' statute[,]" a phrase routinely used in conjunction with this statutory provision.

4. Perkins was placed on Phase II probation as a juvenile public offender on December 2, 2011.

5. KRS 515.020, a Class B felony.

6. "If a child charged with a capital offense, Class A felony, or Class B felony, had attained age fourteen (14) at the time of the alleged commission of the offense, the court shall, upon motion of the county attorney made prior to adjudication, and after the county attorney has consulted with the Commonwealth's attorney, that the child be proceeded against as a youthful offender, proceed in accordance with the provisions of KRS 640.010."

7. "Any other provision of KRS Chapters 610 to 645 to the contrary notwithstanding, if a child charged with a felony in which a fire-

against Perkins as a youthful offender. Defense counsel promptly moved the district court to declare KRS 635.020 and 640.010 unconstitutional. KRS 640.010(2)(b) lists eight factors the district court must consider as a threshold to exercise its discretion and transfer the case to circuit court under KRS 635.020(2).

On November 8, 2012, defense counsel filed an *ex parte* motion requesting funds to hire an expert witness to determine whether Perkins was competent to stand trial[8] and to explore three statutory factors—specifically the "child's maturity, best interests and amenability to treatment"—the district court would consider under KRS 640.010(2)(b). The defense proposed to hire Douglass Mossman, M.D., in its quest to prevent transfer.

At a hearing convened in district court on November 16, 2012, the first item addressed was the constitutionality of Kentucky's transfer statutes. Both the defense and the Commonwealth relied primarily on their written memoranda, with defense counsel arguing *Caldwell*, in which the Supreme Court of Kentucky had held "KRS 635.020(4) is constitutional[,]" 133 S.W.3d at 453, was no longer good law and to be valid, a statute must specify the standard of proof to be applied during the transfer hearing, a theory rejected in *Stout v. Commonwealth*, 44 S.W.3d 781, 787 (Ky. App.2000).

The Commonwealth responded most of the defense arguments were based on cases dealing with sentencing rather than transfer hearings and *Caldwell* had not been overruled. Citing *Stout*, the Commonwealth argued "a juvenile offender has no constitutional right to be tried in juvenile court." *Id.* at 785. As explained in *Stout*, realizing every juvenile offender does not belong in juvenile court, Kentucky's General Assembly created two processes for transferring charges against a juvenile to circuit court—one process is automatic—when probable cause is found to believe a firearm was used to commit a felony by a juvenile who is age 14 or older—and the other is discretionary—based on consideration of eight specific factors. *Id.* at 786. In *Stout*, a panel of this Court recognized lack of a specified standard of proof in a transfer statute is not a fatal flaw—largely because a transfer hearing does not determine guilt or innocence, it merely determines which court will hear and decide the case. *Id.* at 788–89. In that sense, it is merely a preliminary hearing at which the Commonwealth offers proof to establish probable cause the accused committed the offense and does

arm, whether functional or not, was used in the commission of the offense had attained the age of fourteen (14) years at the time of the commission of the alleged offense, he shall be transferred to the Circuit Court for trial as an adult if, following a preliminary hearing, the District Court finds probable cause to believe that the child committed a felony, that a firearm was used in the commission of that felony, and that the child was fourteen (14) years of age or older at the time of the commission of the alleged felony. If convicted in the Circuit Court, he shall be subject to the same penalties as an adult offender, except that until he reaches the age of eighteen (18) years, he shall be confined in a facility or program for juveniles or for youthful offenders, unless the provisions of KRS 635.025 apply or unless he is released pursuant to expiration of sentence or parole, and at age eighteen (18) he shall be returned to the sentencing Circuit Court for proceedings consistent with KRS 640.030(2)."

8. At a hearing on April 12, 2013, defense counsel advised the court Dr. Douglass Mossman had met with Perkins and found him competent to stand trial. Ultimately, funds were not expended for submission of a written report. This fact was repeated by counsel during the youthful offender transfer hearing on May 6, 2013.

not trigger double jeopardy. *Sharp v. Commonwealth*, 559 S.W.2d 727, 728 (Ky. 1977). Having heard argument, the district court found both KRS 635.020 and 640.010 constitutional.

With the constitutional challenge resolved, the district court heard Perkins' *ex parte* motion for expert funds. The district court stated at the outset it was unaware of any need for a psychiatrist at a transfer hearing, distinguishing that type of proceeding from mounting an insanity defense at trial—the context of *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), on which Perkins heavily relied—or seeking to establish mitigating factors at a sentencing hearing. The district court said it was looking for a reason to order such funds, noting if it ordered the expenditure this time, it would set a precedent for all juveniles to receive such funds in future cases.

Relying on KRS 31.185(1) and (2),[9] defense counsel argued due process requires an indigent defendant receive expert funding to prepare his case and "develop" evidence, but produced no case approving funds for a defense expert witness to prepare for, or present evidence at, a juvenile transfer hearing. Ultimately, noting the defense had presented only the bare minimum, the district court approved $2,500 for an expert for the limited purpose of evaluating Perkins for competency and capacity, but not for the transfer hearing because a psychiatrist could add nothing to a discussion of the eight factors mentioned in KRS 640.010(2)(b) and would have no bearing on the three elements necessary for an automatic transfer—a juvenile of at least 14 years having used a firearm to commit a felony.

Having previously determined it would convene one transfer hearing[10] at which it would hear evidence pertaining to both KRS 635.020(2) and (4), that hearing finally occurred before the district court on May 6, 2013. The hearing began with Perkins stipulating his birth date. Next, a Fayette Juvenile Court deputy clerk read Perkins' juvenile record—it was not lengthy and contained no felonies. Then, Officer Holland, who had charged Perkins with his most recent crimes, described the robbery and the investigation that followed, including the victim's positive identification of Perkins. That concluded the Commonwealth's proof as to probable cause—a matter about which the defense offered no proof. Defense counsel argued there was probable cause to believe a felony had occurred, but not that the felony was committed by Perkins, suggesting one of three other males with Perkins was the real perpetrator. Based on testimony Perkins had committed the crime and the victim's positive identification of him, the trial court orally found probable cause existed to believe Perkins, while 14 years of

9. "(1) Any defending attorney operating under the provisions of this chapter is entitled to use the same state facilities for the evaluation of evidence as are available to the attorney representing the Commonwealth. If he or she considers their use impractical, the court of competent jurisdiction in which the case is pending may authorize the use of private facilities to be paid for on court order from the special account of the Finance and Administration Cabinet.

(2) The defending attorney may request to be heard *ex parte* and on the record with regard to using private facilities under subsection (1) of this section. If the defending attorney so requests, the court shall conduct the hearing *ex parte* and on the record."
[Emphasis stressed by defense counsel during argument].

10. In a memorandum filed August 20, 2012, Perkins asked for one combined youthful offender hearing rather than two proceedings—one under KRS 635.020(2) and another under KRS 635.020(4).

age or older, had committed a felony in which a firearm was used. This finding was reflected on the Youthful Offender Transfer Hearing Order by the court checking the box on the standard AOC form [11] stating the Commonwealth:

> **has** ... established probable cause that an offense was committed and that the child committed an offense falling within the purview of KRS 635.020(2), (3), (5), (6), (7), or (8);

> AND

> **has** ... proven that the child:

> > was 14 years of age at the time of the alleged commission of the offense and is charged with a capital offense, Class A or Class B felony.

> > . . . .

> > was 14 years of age at the time of the alleged commission of the offense and is charged with a felony in which a firearm was used in the commission of the offense.

The district court having found the three elements necessary for transfer under KRS 635.020(4), transfer was a foregone conclusion, but the hearing continued.

The Commonwealth called Gary Watkins, the juvenile probation officer assigned to Perkins, to address the eight factors listed in KRS 640.010(2)(b)—factors the court must consider when the Commonwealth seeks transfer under KRS 635.020(2). Watkins testified Perkins had not succeeded on probation; missed school and was AWOL from January through May of 2012; never completed a drug and alcohol assessment; and, while "wise," had shown no desire to comply, and Watkins had no means of making him comply. On cross-examination, Watkins stated he completed a predisposition investigation of Perkins; Perkins did not attend a day treatment program (similar to an alternative school); Perkins was referred to workshops he did not attend; home services were never requested; and, no Department of Juvenile Justice services were used.

In response to questions from the bench, Watkins confirmed there was no evidence Perkins was associated with a gang. After Watkins was excused, defense counsel offered no testimony about the eight factors, but asked the court to take judicial notice of a police report stating no gang involve-

---

11. The handwritten portion of the order stated the specific reasons for transfer were,

> Probable Cause to believe Δ committed Class B Felony (Robbery 1 st) was over 14 years of age @ time of commission upon motion of County Atty after conferring w/Comm. Atty; all per KRS 635.020."

Other portions of the standard AOC form, which contains several check-off boxes, parrot KRS 640.010(2)(b), stating the Commonwealth "has ... established that an offense was committed and that the child committed an offense falling within the purview of KRS 635.020(2), (3), (5), (6), (7), or (8); and "has ... proven that the child: was 14 years of age at the time of the alleged commission of the offense and is charged with a capital offense, Class A or Class B Felony[;]" "was 14 years of age at the time of the alleged commission of the offense and is charged with a felony in which a firearm was used in the commission of the offense[;]" and, "the Court has consid-ered the following factors ... [t]he seriousness of the alleged offense; whether the offense was against person or property, the maturity of the child as determined by his environment; the child's prior record, or lack thereof; the best interest of the child and community; the prospects of adequate protection of the public; and the likelihood of reasonable rehabilitation of the child by use of procedures, service and facilities currently available to the juvenile justice system." The only one of the eight factors recited in KRS 640.010(2)(b) not checked on the form was "[e]vidence of child's participation in a gang." The district court did not check all applicable boxes. It did not indicate whether the seven factors it found favored or did not favor transfer. Because no box was checked on this item, the Commonwealth rests its argument "on the mandatory transfer under KRS 635.020(4)" alone.

ment was indicated. Defense counsel then explained Perkins was reluctant to cooperate with the Division of Youth Services (DYS) because he and his family had experienced great trauma and violence. Perkins' cousin was shot by a friend in 2009 and another cousin was shot by an adult in 2010. Both cousins—one 17 and the other 19—died. Additionally, Perkins' mother had died in a car accident. Defense counsel argued these events affected Perkins' maturity and amenability to rehabilitation.

In addressing the eight factors, defense counsel made the following points: seriousness of a crime does not depend solely upon the name of the crime—here, no one was injured and the cell phone was returned to the victim—it was unclear whether the $45 in cash was returned; this was a crime against a person rather than against property; Perkins was not as wise at the age of sixteen as he thought he was; all his prior offenses were either marijuana or alcohol related—there were no felonies, no school assaults, and no prior gun involvement; it is never in a child's best interest to be thrust into adult court, nor is it in the community's best interest to have yet another child with a felony record who cannot get a job; Perkins' family has been surrounded by violence; and, Perkins had been probated to DYS only six or seven months when these latest crimes occurred—no resources beyond DYS had been exhausted or even attempted. Defense counsel concluded by reminding the court, even if it found two of the eight factors existed, transfer was still discretionary under KRS 640.010(2)(c).

The Commonwealth then gave its view of the factors, beginning by stating placing a loaded gun in a man's back is second in seriousness only to the crime of murder;

Perkins' crime was against a person; Watkins testified Perkins is mature and wise, and defense counsel had revealed Dr. Mossman found him to be competent; while Perkins had not been convicted of a felony, his prior record indicated a disturbing trend, including being AWOL for several months, and while services had been offered to help him improve himself, he had rejected them; the public must be kept safe and protected so they can visit a park or playground at any time, day or night, especially when there is no proof the victim did anything illegal;[12] rehabilitation is unlikely given that attempts by the government had failed and Perkins would not even try; there was no proof of gang activity; and finally, more than two factors existed, making transfer under KRS 635.020(2) appropriate.

With argument complete, the district court commented on each factor, noting it had already found the existence of probable cause to believe Perkins had committed a Class B felony involving a firearm when he was more than fourteen years of age—satisfying the automatic transfer statute. The court found the current crimes were both serious and against a person rather than against property. The court stated it believed Perkins was a mature, polite, young man, and while his record contained no felonies, his prior offenses were not inconsequential. The court noted it must protect the public and Perkins' aunt is a support system for him—something many juveniles appearing in court do not have, and there was no indication of gang activity. The court was torn on the three remaining factors. First, while it might be in Perkins' best interest to remain in district court, better programs might be available to him in adult court. Second,

**12.** The robbery occurred in a park or playground near a school just before midnight. Defense counsel had questioned why the victim was there at that hour. She did not question why Perkins was there.

while it would not be in the community's best interest for Perkins to be imprisoned for many years, it also would not be in the community's best interest for him to be on the street putting a gun in someone else's back knowing what can happen since two of his own teenaged cousins had died from gunshots. Third, as for rehabilitation, Watkins had testified he could not make Perkins comply with offered programs, but perhaps Perkins' attitude had changed during the year he had just spent in custody.

When the Commonwealth asked the district court for clarification on how it was proceeding, the court questioned whether it still had jurisdiction because it had already found the existence of probable cause under KRS 635.020(4), believing that made transfer to the circuit court mandatory. After a short break, the court returned to the bench and found, on the strength of Commonwealth v. Deweese, 141 S.W.3d 372, 375–76 (Ky.App.2003), jurisdiction had automatically vested in the circuit court upon his finding of probable cause.

## CIRCUIT COURT PROCEDURAL BACKGROUND

On June 18, 2013, an indictment was returned against Perkins in Fayette Circuit Court. On July 12, 2013, Perkins moved the circuit court to dismiss the charges for lack of subject matter jurisdiction due to improper juvenile certification and to declare KRS 635.020 and 640.010 unconstitutional. Perkins claimed the district court had erred in holding two transfer hearings, but in reality there was only one combined hearing addressing both statutes; without an expert witness, the defense could not refute the probation officer's testimony that Perkins acted age-appropriately and could not address other statutory factors; neither statute specifies the standard of proof to be used during the preliminary hearing; the district court's basis for transfer was unclear due to insufficient findings of fact; the district court had not found Perkins used the firearm in committing the robbery under KRS 635.020(4); and finally, KRS 635.020(4) is marred by a lack of jury involvement, and is, therefore, inconsistent with Apprendi, a case our Supreme Court chose not to apply to juvenile proceedings in Caldwell from which we quote at length:

> Caldwell argues that he was denied a full and fair transfer hearing in juvenile court when that court only conducted a KRS 635.020(4) "automatic transfer" hearing. He contends that the process is flawed because it violates the due process requirements of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the fair hearing requirements of Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) and the equal protection clause. We disagree.
>
> KRS 635.020(4) provides that a child shall be transferred to circuit court if, following a preliminary hearing, the district court finds probable cause to believe the following three factors: 1) that the child has committed a felony; 2) that he was over 14 years of age at the time of the offense; and 3) that a firearm was used in the commission of that felony. It is misleading for Caldwell to characterize KRS 635.020(4) as an "automatic transfer" statute.
>
> Apprendi, supra, requires that any fact other than that of a prior conviction which increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and determined by the jury to be true beyond a reasonable doubt. The rationale of that case has been applied to juvenile transfer proceedings by the Massachusetts Supreme Court in Commonwealth

*v. Quincy Q.*, 434 Mass. 859, 753 N.E.2d 781 (2001). Caldwell urges this Court to adopt the rationale of *Quincy Q., supra,* which would require the Commonwealth to prove the "automatic transfer" factors beyond a reasonable doubt in juvenile court, submit them to the grand jury and have them included in the instructions to the jury. We decline to adopt such a requirement. Instead, we are persuaded by the view of those states which have concluded that *Apprendi* does not apply to juvenile proceedings. *See e.g., State v. Jones,* 273 Kan. 756, 47 P.3d 783, 796 (2002), *cert. denied* 537 U.S. 980, 123 S.Ct. 444, 154 L.Ed.2d 341 (2002).

A juvenile transfer proceeding does not involve sentencing or a determination of guilt or innocence. The decision to transfer a juvenile to circuit court involves the determination of which system is appropriate for a juvenile defendant. We recognize that a juvenile transferred to circuit court and tried as an adult offender will be exposed to the statutory maximum sentence on the applicable criminal statute, which in most cases will exceed the statutory maximum disposition in the juvenile system.

The Kentucky juvenile transfer statute does not violate the fair hearing requirement of *Kent, supra.* That case held that, where the federal statute allowed the juvenile court to waive its exclusive jurisdiction over a juvenile offender after the court made a full investigation, due process required that the court hold a hearing before waiving jurisdiction. Here, a preliminary hearing was held after which the district court found probable cause to believe that Caldwell was fourteen years of age when he committed a felony with a firearm. The essentials of due process and fair treatment required by *Kent* were satisfied.

KRS 635.020(4) does not violate the equal protection rights of Caldwell under our state or federal constitutions. Juveniles are not members of a suspect class and there is no constitutional right to be treated as a juvenile. *Cf. Commonwealth v. Howard,* Ky., 969 S.W.2d 700 (1998). The statutory classification must then be considered under the rational basis test. Where, as here, the act of the legislature does not contain a suspect classification and does not impinge on a fundamental right, the burden is on the party claiming a violation of equal protection to establish that the statutory distinction is without a rational basis. *Howard, supra.*

There is an obvious legitimate governmental interest in curtailing violent crimes by juveniles and protecting the public from harm. The decision of the legislature to further that interest by transferring certain juveniles to circuit court to be tried as adults after a finding of probable cause by the district judge is reasonably related to the pursuit of that legitimate goal. There is a rational basis for the statutory classification. It does not violate either the state or federal equal protection clauses. KRS 635.020(4) is constitutional.

*Caldwell,* 133 S.W.3d at 452–53.

In response to Perkins' motion, the Commonwealth argued the complaints were answered by *Caldwell* and *Stout.* Moreover, *Blakely v. Washington,* 542 U.S. 296, 299, 124 S.Ct. 2531, 2535, 159 L.Ed.2d 403 (2004) was distinguishable because it concerned a judge imposing sentence based upon facts made by the court rather than findings made by a jury. Finally, *Roper v. Simmons,* 543 U.S. 551, 553, 125 S.Ct. 1183, 1186, 161 L.Ed.2d 1 (2005), and *Graham v. Florida,* 560 U.S. 48, 48, 130 S.Ct. 2011, 2015, 176 L.Ed.2d 825 (2010), were distinguishable because

they dealt with juvenile sentencing options, not transfer of juvenile charges to circuit court.

In a supplemental response, the Commonwealth argued KRS 635.020(2) applied *only* if the district court did *not* find probable cause existed under KRS 635.020(4)—but in this case, the district court made the finding necessary for automatic transfer. Furthermore, KRS 635.020 does not expressly require appointment of a defense expert before the district court may consider the factors listed in KRS 640.010(2)(b). Finally, because the district court found transfer was mandatory under KRS 635.020(4), consideration of the eight factors listed in KRS 640.010(2)(b) was unnecessary.

The circuit court heard the motion on August 29, 2013. The court made the following findings from the bench: the district court followed the proper procedure in conducting the single transfer hearing; the Commonwealth was not required to elect whether to proceed under KRS 635.020(2) or (4); both KRS 635.020 and KRS 640.010 are constitutional; and, no expert defense witness was required for the transfer hearing. Earlier in the hearing, the circuit court had stated it believed it was bound by *Caldwell* until the case is reversed by the Supreme Court. At the conclusion of the hearing, Perkins was arraigned and pled not guilty.

On September 13, 2013, Perkins turned 18 years of age. On January 31, 2014, he executed a waiver of further proceedings and petition to enter a conditional plea of guilty. On February 6, 2014, he was sentenced to serve eight years on an amended charge of robbery in the second degree, and a concurrent 12 months on a charge of possession of a handgun by a minor, first offense. This appeal followed.

13. Rules of the Supreme Court.

## ANALYSIS

■ Perkins, an indigent defendant, first claims on appeal he was entitled to government funds to hire an expert to assist in preventing transfer of the charges from juvenile court to circuit court. He argues without expert assistance he could not adequately address three of the factors the district court was statutorily mandated to consider—namely, his level of maturity, best interests and amenability to treatment. Perkins has cited no case specifically requiring approval of expert witness funds for a transfer hearing. In this particular case the matter is moot because the district court had already found the elements necessary for automatic transfer under KRS 635.020(4) before consideration of the factors listed in KRS 640.010(2)(b) began.

Perkins' second allegation is transfer ran afoul of *Apprendi* and was, therefore, unconstitutional. As noted previously, in *Caldwell*, the Supreme Court of Kentucky chose not to extend *Apprendi* to juvenile proceedings. *Caldwell*, 133 S.W.3d at 453. Contrary to defense counsel's argument that *Caldwell* is no longer good law, we find no indication our state Supreme Court has overruled or even reconsidered *Caldwell*. Apart from referencing the *Caldwell* opinion in *Stansbury v. Commonwealth*, 454 S.W.3d 293, 299, n. 1 (Ky.2015) (superseded by statute on other grounds), wherein the Court addressed the procedure for preserving an issue for appeal absent an avowal, *Caldwell* remains intact and we are unauthorized to do anything but follow it. SCR [13] 1.030(8)(a).

■ Perkins' third claim is KRS 635.020(4), the automatic transfer statute, violates substantive due process and equal protection. The argument stems from Perkins' belief he had a "fundamental

right" to be treated as a juvenile, which he considers to be a suspect class.

 In rendering *Caldwell* in 2004, our Supreme Court recognized transferring juvenile charges to circuit court often exposes the minor to a longer statutory maximum sentence as an adult than he would face as a juvenile, but did not deem this to be constitutionally unacceptable. 133 S.W.3d at 453. As explained by this Court in *Moffitt v. Commonwealth*, 360 S.W.3d 247, 253 (Ky.App.2012), when our Supreme Court reviewed Kentucky's Sex Offender Registration Act, KRS 17.500–17.580, it wrote,

> [s]ubstantive due process prohibits certain "governmental deprivations of life, liberty, or property" irrespective of their procedural fairness. *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir.2007). It functions to shield citizens from unrestrained and arbitrary government acts which lack a "reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1043 (1998); *see also Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir.1988) ("Substantive due process, a much more ephemeral concept [than procedural due process], protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action."); *Miller [v. Johnson Controls, Inc.]*, 296 S.W.3d [392,] 397 [ (Ky.2009) ] (noting "substantive due process ... is based on the idea that some rights are so fundamental that the government must have an exceedingly important reason to regulate them, if at all .... ").

Similarly, in analyzing KRS 189A.010(1)(e), often called the juvenile DUI statute, the Supreme Court wrote,

> equal protection analysis requires strict scrutiny of legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. Unless a classification requires some form of heightened review because it jeopardizes the exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the equal protection clause of the federal constitution requires only that the classification rationally further a legitimate state interest. [*Massachusetts Board of Retirement v.*] *Murgia*, [427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) ].

Here, the statute does not violate the Fourteenth Amendment to the United States Constitution because it is rationally related to a legitimate state purpose. *Nordlinger v. Hahn*, 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). Under the rational basis test, a classification must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. *Heller v. Doe*, 509 U.S. 312, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993), *citing F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).

*Commonwealth v. Howard*, 969 S.W.2d 700, 703 (Ky.1998). Our Supreme Court has already held juveniles do not constitute a suspect class "and there is no constitutional right to be treated as a juvenile." *Caldwell*, 133 S.W.3d at 453. Because there is no suspect class or fundamental right involved in a juvenile transfer hearing, the applicable level of review is not strict scrutiny as Perkins argues, but rather, rational basis. *Id.* "So long as the statute's generalization is rationally related to the achievement of a legitimate purpose; the statute is constitutional." *Howard*, 969 S.W.2d at 703 (internal citations omitted). Because statutes are presumed constitutional, the party challenging the

statute, not the state, bears the burden of proving lack of a rational relationship for the classification. *Id.*

As explained in *Caldwell*, the General Assembly's decision to transfer a juvenile age 14 years or older to circuit court because a district court found probable cause to believe he committed a felony with a firearm is "reasonably related" to the "obvious legitimate governmental interest in curtailing violent crimes by juveniles and protecting the public from harm." 133 S.W.3d at 453. Perkins has failed to carry his burden. The automatic transfer statute offends neither substantive due process nor equal protection.

■ Perkins' fourth and final allegation is the district court failed to make sufficient findings for transfer. Specifically, he claims the court failed to find he personally used the firearm during the alleged offense. We disagree.

Transfer to circuit court is automatic when the district court finds probable cause to believe three elements—the juvenile committed the alleged felony; a firearm was used in the commission of the alleged felony; and the juvenile was 14 or older when he committed the alleged felony. The district court found each of these elements, and all three were supported by substantial evidence as required by *Stout*, 44 S.W.3d at 788–89. Contrary to Perkins' view, nowhere does KRS 635.020(4) require the juvenile to personally wield the firearm for transfer to occur.

During the transfer hearing, Officer Holland recounted his interview with the victim which occurred shortly after the incident. According to the victim, Perkins and three other black males had followed him around a school playground or park for some time in the late evening hours of July 28, 2012. While the victim leaned over a fence, two of the males split off while the other two, including Perkins, came up behind him and Perkins placed a gun in the victim's back, telling him to hand over "his stuff" or Perkins would shoot him. The victim turned, saw the gun and relinquished his cell phone and $45 in cash. Perkins was found shortly thereafter in the bedroom of a nearby home where the gun and the victim's cell phone were located between the mattress and box springs of a bed. Perkins admitted the gun was his. During a show-up shortly thereafter, the victim positively identified Perkins as the black male who put the gun in his back saying he would shoot if the victim did not give him "his stuff." The victim identified another of the black males as being present but playing no active role in the robbery. Based on the victim's account, the gun was placed only in Perkins' hand and he used it to commit the robbery as reflected by the district court's ruling from the bench. This constituted substantial proof of Perkins being the person who robbed the victim at gunpoint. *Id.*

As this was a ruling on the Commonwealth's Motion to Proceed as Youthful Offender, CR[14] 52.01 did not require findings of fact and conclusions of law. However, based upon the oral findings of fact made from the bench, and those reflected on the Youthful Offender Transfer Hearing Order, there can be no doubt the district court adequately explained the basis for transfer and satisfied the requirements for automatic transfer.

WHEREFORE, the judgment entered by the Fayette Circuit Court is AFFIRMED.

ALL CONCUR.

---

14. Kentucky Rules of Civil Procedure.